[No. 51017-2.   En Banc.   September 5, 1985.]

CAROL R. HEIDEBRINK, ET AL, *Respondents*, v. NOBUO MORIWAKI, ET AL, *Petitioners*.

*Layman, Loft, Smythe & Arpin,* by *Gregory J. Arpin,* for petitioners.

*Dano, Cone, Fraser & Gilreath,* by *Theodore G. Lucas* and *H. K. Dano,* for respondents.

*William J. Leedom* and *William H. Robertson* on behalf of Washington Association of Defense Counsel and *John B. Crosby* on behalf of National Association of Independent Insurers, amici curiae for petitioners.

*Daniel E. Huntington, Bryan P. Harnetiaux,* and *Gary N. Bloom* on behalf of Washington Trial Lawyers Association, amici curiae for respondents.

PEARSON, J.—The issue presented by this case is whether the statement of an insured to his or her insurance company is protected by the attorney–client privilege or the work product immunity rule. The trial court ruled the statement was not discoverable. The Court of Appeals reversed and ordered production of the statement. We now reverse the decision of the Court of Appeals on the basis that the statement is protected by the work product immunity rule codified in CR 26(b)(3).

I

This lawsuit arose from a multiple car collision on a state highway near Moses Lake, Washington, on March 15, 1982. Respondents allege that Mrs. Heidebrink was traveling west on this highway when suddenly her car was surrounded by a dense cloud of smoke, causing her to collide with the car ahead of her. Several cars were involved in a chain collision and other motorists, in addition to Mrs.

Heidebrink, were injured. Respondents claim that the cloud of smoke and the ensuing collisions were caused by Mr. Moriwaki's negligence in burning grain stubble in an adjacent field.

At the time of the incident Mr. Moriwaki carried a liability insurance policy issued by Continental Insurance Company. Under the terms of this policy, Continental was contractually obligated to defend Mr. Moriwaki against all insured claims. This contractual duty allowed Continental to select and retain an attorney to represent the insured and required the insured to cooperate in his defense.

On March 17, 1982, two days after the accident, Tim Dahmen, an investigator and adjuster for Continental, contacted Mr. Moriwaki and tape–recorded his statement relating to the accident. The tape was subsequently transcribed. Several months later the Heidebrinks filed a personal injury action against the Moriwakis. Thereafter Mr. Moriwaki's deposition was taken at which time he testified about the existence of the statement.

Counsel for respondents requested a copy of the transcript of Mr. Moriwaki's statement. Defense counsel objected on grounds of work product and attorney–client privilege. Respondents subsequently moved for an order compelling production. The trial court denied the order. The Court of Appeals reversed. *Heidebrink v. Moriwaki*, 38 Wn. App. 388, 685 P.2d 1109 (1984).

II

Pursuant to Fed. R. Civ. P. 26(b)(1) and CR 26(b)(1), in their current form, a party may obtain discovery of any matter which is relevant to the subject matter involved in the pending action and not privileged. The scope of such discovery, however, is limited by Fed. R. Civ. P. 26(b)(3) and CR 26(b)(3) which provide in relevant part:

> Subject to the provisions of subsection [subdivision in Fed. R. Civ. P.] (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subsection (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for

another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

Fed. R. Civ. P. 26(b)(3) and CR 26(b)(3) embody the policies set forth by the United States Supreme Court over three decades ago in the now famous decision of *Hickman v. Taylor,* 329 U.S. 495, 91 L. Ed. 451, 67 S. Ct. 385 (1947). In fact, more recently the Supreme Court explicitly stated that rule 26(b)(3) codifies the principles of the "work product doctrine" first established in *Hickman. Upjohn Co. v. United States,* 449 U.S. 383, 401, 66 L. Ed. 2d 584, 101 S. Ct. 677 (1981).

In *Hickman* the plaintiff had attempted to discover the statements of witnesses and any other relevant information the attorney for the defendants had prepared with an "eye" toward litigation. *Hickman,* at 498–99. While examining the scope of discovery question, the Supreme Court explained that the discovery rules were to be accorded broad and liberal treatment. Trials were no longer to be carried on in the dark; instead, the goal of discovery was to ensure mutual knowledge of all relevant facts. *Hickman,* at 501, 507. However, the Court stressed that it was necessary to maintain certain restraints on bad faith, irrelevant, and privileged inquiries in order to ensure the just and fair resolution of disputes. Hence, the Court held that an attorney's "work product", although relevant and not privileged, is discoverable only upon a showing of good cause. *Hickman,* at 512.

In its original form, Fed. R. Civ. P. 26(b)(3) protected only those writings prepared by an attorney in preparation for trial. However, Fed. R. Civ. P. 34 contained a "good cause" requirement which prevented discovery of other materials if the party seeking discovery did not show good cause for such discovery. The rule in this state as originally

adopted was different than the federal rule. It provided in part:

The court need not order the production or inspection of any writing obtained or prepared by the adverse party, his attorney, surety, indemnitor or agent in anticipation of litigation or in preparation for trial.

CR 26(b), 71 Wn.2d lxvii (1967). Although never interpreted by this court, this rule apparently placed the matter of discovery within the discretion of the court and required a showing of good cause before allowing such discovery.

As history shows us, problems arose over the proper scope of Fed. R. Civ. P. 26(b)(3). The rule did not specifically address the extent to which a party could discover materials prepared for trial by nonattorneys nor did it indicate exactly what was meant by "good cause". *See* Note, *Work Product Discovery: A Multifactor Approach to the Anticipation of Litigation Requirement in Federal Rule of Civil Procedure 26(b)(3)*, 66 Iowa L. Rev. 1277 (1981). To remedy these deficiencies the federal rules were amended in 1970. The requirement of good cause was deleted from Fed. R. Civ. P. 34 and Fed. R. Civ. P. 26(b)(3) was changed to read as previously provided herein. Whether this State would have confronted similar problems with CR 26(b)(3) as originally adopted is of little consequence since in 1972 it was amended to conform with the federal rule. CR 26(b)(3), 80 Wn.2d 1189 (1972). Thus, under both the federal and Washington rules, there is no distinction between attorney and nonattorney work product. The test for determining whether such work product is discoverable is whether the documents were prepared in anticipation of litigation and, if so, whether the party seeking discovery can show substantial need.

Many federal courts and other state courts have struggled over the proper interpretation of CR 26(b)(3). The Court of Appeals found the analysis in *Hawkins v. District Court,* 638 P.2d 1372 (Colo. 1982) and *Thomas Organ Co. v. Jadranska Slobodna Plovidba,* 54 F.R.D. 367 (N.D. Ill. 1972) very persuasive.

*Hawkins* involved an action by an insured against his insurance carrier for bad faith. Plaintiff sought discovery of notes and reports of defendant's adjuster regarding his interviews with several witnesses. In ruling that the documents were discoverable, the court concluded:

> Because a substantial part of an insurance company's business is to investigate claims made by an insured against the company or by some other party against an insured, it must be presumed that such investigations are part of the normal business activity of the company and that reports and witness' statements compiled by or on behalf of the insurer in the course of such investigations are ordinary business records as distinguished from trial preparation materials.

*Hawkins,* at 1378.

*Thomas Organ Co.* involved a defendant's request for production of two documents written by a marine surveyor hired by plaintiff's insured. In deciding that the documents were discoverable, the court asserted that unless the documents are requested by or prepared for an attorney, or otherwise reflect the employment of an attorney's legal expertise, they are conclusively presumed to have been made in the ordinary course of business. *Thomas Organ Co.,* at 372.

In addition to the two cases already mentioned, respondents set forth several more for the proposition that an insured's statement to his insurer is discoverable. Several of these cases can be set aside immediately as not on point since they were decided prior to CR 26(b)(3) being amended. *See Jackson v. Kroblin Refrigerated Xpress, Inc.,* 49 F.R.D. 134 (N.D. W. Va. 1970); *Southern Ry. v. Campbell,* 309 F.2d 569 (5th Cir. 1962); *Rucker v. Wabash R.R.,* 418 F.2d 146 (7th Cir. 1969); *Gottlieb v. Bresler,* 24 F.R.D. 371 (D.C. 1959); *Alseike v. Miller,* 196 Kan. 547, 412 P.2d 1007 (1966).

Several other cases cited by respondents are likewise not directly on point since, as in the *Hawkins* and *Thomas Organ Co.* cases, they concern reports and statements of nonparty witnesses rather than statements of an insured.

*See Martin v. N.V. Nederlandsche Amerikaansche Stoom-vaart Maatchappij*, 8 F.R.D. 363 (S.D.N.Y. 1948) (report made by consulting engineers for insurance carrier); *Khoudary v. Home Ins. Co.*, 77 Misc. 2d 864, 355 N.Y.S.2d 291 (1974) (first report of an adjusting firm furnished to defendant insurance company concerning a fire loss covered by defendant's policy); *Hopkins v. Chesapeake Utils. Corp.*, 300 A.2d 12 (Del. 1972) (reports of marine surveyors and investigators to insurance company); *Garfinkle v. Arcata Nat'l Corp.*, 64 F.R.D. 688 (S.D.N.Y. 1974) (notes and memoranda prepared by attorneys for an opinion letter to client).

Respondents do, however, cite one case which is very similar to the one at hand. In *Henry Enters., Inc. v. Smith*, 225 Kan. 615, 592 P.2d 915 (1979) plaintiff sought discovery of a statement made by the defendant corporation's principal officer to the corporation's insurance carrier. The issue, as framed by the court, was whether statements of witnesses taken routinely by adjusters or investigators for insurance carriers upon receipt of claims or knowledge of claims under the policy are discoverable. *Henry Enters.*, at 615. In concluding they were discoverable, the court stated:

> It is apparent to us, and we hold, that the initial investigation of a potential claim, made by an insurance company prior to the commencement of litigation, and not requested by or made under the guidance of counsel, is made in the ordinary course of business of the insurance company, and not "in anticipation of litigation or for trial" . . .

*Henry Enters.*, at 623.

On the other side of the struggle are cases cited by petitioners. Several of petitioners' cases are also not directly on point since they are broader than the instant case in that they involved statements from nonparty witnesses. *See Garfinkle v. Arcata Nat'l Corp., supra; Burlington Indus. v. Exxon Corp.*, 65 F.R.D. 26 (D. Md. 1974); *American Optical Corp. v. Medtronic, Inc.*, 56 F.R.D. 426 (D. Mass. 1972); *Arney v. Geo. A. Hormel & Co.*, 53 F.R.D. 179 (D.

Minn. 1971); *Almaguer v. Chicago, R.I. & Pac. R.R.,* 55 F.R.D. 147 (D. Neb. 1972); *Ashmead v. Harris,* 336 N.W.2d 197 (Iowa 1983).

One case is, however, very similar to this one. *Fireman's Fund Ins. Co. v. McAlpine,* 120 R.I. 744, 391 A.2d 84 (1978) involved four cases, one of which concerned a 5–car chain collision. Shortly after the collision an investigator for two of the defendants took written statements from the insureds. In concluding that such statements were prepared in anticipation of litigation, the court stated:

> In our litigious society, when an insured reports to his insurer that he has been involved in an incident involving another person, the insurer can reasonably anticipate that some action will be taken by the other party. The seeds of prospective litigation have been sown, and the prudent party, anticipating this fact, will begin to prepare his case. Although a claim may be settled short of the instigation of legal action, there is an ever–present possibility of a claim's ending in litigation. The recognition of this possibility provides, in any given case, the impetus for the insurer to garner information regarding the circumstances of a claim.

(Citation omitted.) *Fireman's Fund,* at 753–54.

Despite the fact that petitioners and respondents present cases on point from other jurisdictions addressing the issue at hand, we believe it inappropriate to subscribe entirely to the rationale of either set of cases. The specific issue at hand is whether an insured's statement to his insurance carrier is protected from discovery by CR 26(b)(3). It is difficult in this context to determine whether a document was prepared in anticipation of litigation since an insurance company's ordinary course of business entails litigation. The requirement of having an attorney involved in the case before documents prepared by an insurance carrier are protected is a rather conclusory determination of the issue and is contrary to the plain language of the rule. On the other hand, broad protection for all investigations conducted by an insurer as suggested by several cases cited by respondents is likewise an unsatisfactory answer to the

problem. Should such a rule of thumb approach become the general rule, it is not hard to imagine insurers mechanically forming their practices so as to make all documents appear to be prepared in "anticipation of litigation". We believe the better approach to the problem is to look to the specific parties involved and the expectations of those parties. With these parties in mind, the scope of CR 26(b)(3) should provide protection when such protection comports with the underlying rationale of the rule to allow broad discovery, while maintaining certain restraints on bad faith, irrelevant and privileged inquiries in order to ensure just and fair resolutions of disputes.

■ This case involves statements by a defendant. There are important distinctions between nonparty witness statements and defendant statements. To begin with, nonparty witnesses have no contractual agreement with the party interviewing them. An insured is contractually obligated to cooperate with the insurance company. Such an obligation clearly creates a reasonable expectation that the contents of statements made by the insured will not be revealed to the opposing party. The insurer on the other hand has a contractual obligation to act as the insured's agent and secure an attorney. The insured cannot choose the attorney but can expect the agent to transmit the statement to the attorney so selected. Without an expectation of confidentiality, an insured may be hesitant to disclose everything known. Such nondisclosure could hinder representation by the selected attorney. In essence, the insurance company has been retained to provide an attorney and the expectation is that statements made by the insured will be held in confidence. Without such protection, the insured would bear many of the burdens of the insurance contract without reaping the benefits. Under these circumstances, we believe the statements are protected by CR 26(b)(3). If the statement were made directly to the selected attorney, it would obviously have been made in anticipation of litigation. The contractual obligation between insured and insurer mandates extension of this protection to statements made by an

insured to his insurance company. Such an extension comports with the policy of maintaining certain restraints on bad faith, irrelevant and privileged inquiries and helps to ensure the just and fair resolution of disputes. Therefore, we hold that a statement made by an insured to an insurer following an automobile accident is protected from discovery under CR 26(b)(3). The question then remains whether respondents have shown substantial need.

Most courts agree that the determination of this issue is vested in the sound discretion of the trial judge, who should look at the facts and circumstances of each case in arriving at an ultimate conclusion. *Fireman's Fund,* at 90; *Southern Ry. v. Lanham,* 403 F.2d 119 (5th Cir. 1968); *Tiedman v. American Pigment Corp.,* 253 F.2d 803 (4th Cir. 1958); *Thomas v. Harrison,* 634 P.2d 328 (Wyo. 1981). We likewise agree that the determination of this issue is vested within the sound discretion of the trial judge. However, because this is a case of first impression, it is imperative that we look to other cases for standards to guide the trial judge in making this determination.

Cases interpreting Fed. R. Civ. P. 26(b)(3) have generally held that to justify disclosure, a party must show the importance of the information to the preparation of his case and the difficulty the party will face in obtaining substantially equivalent information from other sources if production is denied. *In re Int'l Sys. & Controls Corp. Sec. Litigation,* 693 F.2d 1235 (5th Cir. 1982); 4 J. Moore, *Federal Practice* ¶ 26.64 (1984). The clearest case for ordering production is when crucial information is in the exclusive control of the opposing party. *See Loctite Corp. v. Fel–Pro, Inc.,* 667 F.2d 577 (7th Cir. 1981). On the other hand, cases interpreting the federal rule indicate that the substantial need standard is not met if the discovering party merely wants to be sure nothing has been overlooked or hopes to unearth damaging admissions. *Republic Gear Co. v. Borg–Warner Corp.,* 381 F.2d 551, 557 (2d Cir. 1967); *Alltmont v. United States,* 177 F.2d 971 (3d Cir. 1949), *cert. denied,* 339 U.S. 967 (1950). In addition, although several courts

have held that statements contemporaneous with the occurrence may in some instances be unique and cannot be duplicated by later interviews or depositions, *McDougall v. Dunn,* 468 F.2d 468 (4th Cir. 1972), in general there is no justification for discovery of the statement of a person contained in work product materials when the person is available for deposition. *Gay v. P.K. Lindsay Co.,* 666 F.2d 710 (1st Cir. 1981); *see also* 8 C. Wright & A. Miller, *Federal Practice* § 2025, 215 n.72 (1970). Whether a statement is contemporaneous and unique is a question of fact.

In light of all these considerations, we are unable to see any error in the trial court's determination that respondents did not have "substantial need" of petitioner's statement. Although the statement was taken 2 days after the accident, the passage of time alone is insufficient to allow discovery. Respondents have failed to show any other extenuating circumstances justifying disclosure. Hence, the passage of time in the instant case fails to carry the day. Rather, the more important fact is that the statement in question is that of the defendant. He is not unavailable; in fact, it was in his deposition that the conflict arose. There is no claim that he has no present recollection of the events in question. The primary reason for acquiring the statement, as we see it, is impeachment. If the possibility of impeachment alone were sufficient to show substantial need, the work product immunity rule, CR 26(b)(3), would be meaningless as "[a]ny effort at discovery would be said to have a possible impeachment purpose." *Thomas v. Harrison,* 634 P.2d at 333. Hence, we hold that in the instant case respondents have failed to show a substantial need for the statement. Hence, we reverse the Court of Appeals and reinstate the ruling of the trial court.

DOLLIVER, C.J., and UTTER, ANDERSEN, CALLOW, and DURHAM, JJ., concur.

GOODLOE, J. (dissenting)—I would affirm the Court of Appeals decision finding the statement of the insured to his

insurance company is not protected by either the attorney–client privilege, RCW 5.60.060(2), or the work product immunity rule, CR 26(b)(3). The majority does not address the attorney–client privilege issue, limiting its discussion to the work product immunity rule issue. Because of my determination that neither applies, it is necessary to address both issues.

ATTORNEY–CLIENT PRIVILEGE

The attorney–client privilege provides:

> An attorney or counselor shall not, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment.

RCW 5.60.060(2).

Petitioner Moriwaki urges this court to extend the attorney–client privilege to statements made by the insured to the insurance company when the insurance policy requires the insurance company to defend and retain counsel and requires the insured to cooperate. Respondent Heidebrink argues that the privilege should not be extended and is not applicable.

This issue is one of first impression in the state. I reject Moriwaki's position that the ruling of *Cully v. Northern Pac. Ry.*, 35 Wash. 241, 77 P. 202 (1904) should apply here. In *Cully,* the court held that accident reports made by defendant's employees to defendant company were not obtainable by the plaintiff. No insurer was involved. The court's rationale that "'[c]ommunications to any person whose intervention is necessary to secure and facilitate the communication between attorney and client are privileged", *Cully,* at 247, is no longer persuasive in light of the evolution of the attorney–client privilege and the current rules for broad pretrial discovery. *See Bushman v. New Holland Div. of Sperry Rand Corp.,* 83 Wn.2d 429, 434, 518 P.2d 1078 (1974).

Although no attorney–client privilege case involving statements made by an insured exists in Washington, the

court has outlined the general parameters of the attorney–client privilege. The court recently stated that "the existence of an attorney–client relationship turns largely on the client's subjective belief that it exists." *In re McGlothlen,* 99 Wn.2d 515, 522, 663 P.2d 1330 (1983). "Like most privileges, the attorney–client privilege has its basis in the confidential nature of the communication and seeks to foster a relationship deemed socially desirable." *Coburn v. Seda,* 101 Wn.2d 270, 274, 677 P.2d 173 (1984).

The "central purpose" of the privilege "is to encourage free and open attorney–client communication by assuring the client that his communications will be neither directly nor indirectly disclosed to others." *State v. Chervenell,* 99 Wn.2d 309, 316, 662 P.2d 836 (1983); *see Coburn,* at 274. However, because the privilege excludes otherwise material and relevant evidence, contrary to the philosophy of full disclosure, the privilege is not absolute but "must be strictly limited to the purpose for which it exists." *Dike v. Dike,* 75 Wn.2d 1, 11, 448 P.2d 490 (1968); *see Chervenell,* at 316.

Courts in other jurisdictions have addressed application of the attorney–client privilege to statements made by the insured to his insurance company. The courts are split in their characterization of the purpose of the statements, and their characterization determines whether the statement is held privileged or not privileged. The Court of Appeals decision gives a balanced presentation of the two opposing views. *Heidebrink v. Moriwaki,* 38 Wn. App. 388, 390–94, 685 P.2d 1109 (1984).

Jurisdictions holding the insured's statement is privileged take the position that because the insured through his insurance contract delegated the conduct of the defense to the insurance company and because the insured is not represented by counsel of his own choosing at the time the statement is made or later during the litigation, "the insured may properly assume that the communication is made to the insurer as an agent for the dominant purpose of transmitting it to an attorney for the protection of the

interests of the insured." *People v. Ryan,* 30 Ill. 2d 456, 461, 197 N.E.2d 15 (1964); *Bellman v. District Court,* 187 Colo. 350, 352, 531 P.2d 632 (1975). *Bellman* was subsequently modified by *Kay Laboratories, Inc. v. District Court,* 653 P.2d 721, 723 (Colo. 1982), which requires before the privilege will attach a relationship between the attorney and the insurer to specific claims having already arisen. Some jurisdictions provide protection to the insured's statement based solely on the insurance policy's provisions, without requiring an existing attorney–client relationship. *Hollien v. Kaye,* 194 Misc. 821, 825, 87 N.Y.S.2d 782 (1949); *State ex rel. Cain v. Barker,* 540 S.W.2d 50, 56 (Mo. 1976) (and cases cited therein).

These jurisdictions that view the statement as privileged recognize the insurance company as a necessary intermediary between the insured and the attorney retained later or as an agent of the attorney retained later. As explained in *Hollien,*

> in case of accident, the owner of a motor vehicle is bound by the terms of his contract, to make a full and prompt report to his carrier. The assured should be encouraged to, rather than discouraged from, making a full and complete disclosure to his insurance carrier. Let us suppose that an assured does so and furnishes his statement to a lay representative of his carrier, before its general counsel has ever heard of the case and could not yet be said to be the attorney for the assured; or before some other attorney is engaged to represent the assured, and that hence, it might be held that the statement may not come either within the letter or the spirit of section 353 of the Civil Practice Act. Let us suppose further that the statement thus given by the assured to his carrier, in compliance with his contract, and on the assumption that he is furnishing the statement to the agency which he has paid to protect him, reveals the commission of acts which constitute the crime of culpable negligence. Should the assured be prevented from unbosoming himself of the true facts concerning an accident to the very entity, which, either through voluntary choice or under legal compulsion, he has paid to protect his interests in the event of an accident, through fear that his statement could be reached

by the person who will instigate against him either civil or criminal proceedings or both? Or should fear of self–incrimination or fear of a recovery beyond policy limits subjugate the assured to the point of concealing the true facts to the very one whom he has paid in advance to protect him in just such a contingency.

It seems to this court that it would be contrary to sound public policy to permit the discovery and inspection of statements of a defendant or a prospective defendant made to his own insurance carrier, whether made before or after suit is instituted or to its lay representatives, either before or after an attorney has been formally selected by the carrier to represent its assured.

*Hollien,* at 825; *see Barker,* at 56–57.

Jurisdictions holding the insured's statement is not privileged take the position that because the insurance company may use the statement to the insured's disadvantage then the statement is not the same as one made between attorney and client.

The insurance carrier is more than a mere agent transmitting the policyholder's statement to the attorney hired to defend the insured.

The insurance carrier has the right to review and consider the statement submitted by the insured for any legitimate purpose connected with the business of the company. Coverage, cooperation, and renewal are a few of the matters, in addition to consideration of the potential claim, for which the insurer may use the statement of the insured. The use of the statement for a purpose adverse to the interest of the insured is certainly inconsistent with the claim of privilege upon his behalf.

*Butler v. Doyle,* 112 Ariz. 522, 525, 544 P.2d 204 (1975); *see Jacobi v. Podevels,* 23 Wis. 2d 152, 156, 127 N.W.2d 73 (1964).

These jurisdictions are also influenced by the need for full disclosure of the truth. As explained by the *Jacobi* court:

One of the fundamental policies of our law, and one which dominates in the absence of a special policy arising in particular types of situations, is that the judicial system and rules of procedure should provide litigants with

full access to all reasonable means of determining the truth. Secrecy of communication between one person and his attorney is one of the exceptions. It is based upon recognition of the value of legal advice and assistance based upon full information of the facts and the corollary that full disclosure to counsel will often be unlikely if there is fear that others will be able to compel a breach of the confidence.

Dean Wigmore has written:

"Nevertheless, the privilege [attorney–client] remains an exception to the general duty to disclose. . . . It is worth preserving for the sake of a general policy, but is nonetheless an obstacle to the investigation of the truth. It ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle."[4]

[4] 8 Wigmore, Evidence (McNaughton rev. 1961), p. 554, sec. 2291.

*Jacobi,* at 156–57.

Consistent with Dean Wigmore's evaluation is this court's determination that the attorney–client privilege must be strictly limited to the purpose for which it exists because the privilege is contrary to the philosophy of full disclosure of material and relevant evidence. *Dike,* at 11.

Because of the rationale for and limitations on the applicability of the attorney–client privilege, I believe the Court of Appeals reached the proper balance by not adopting in its entirety either position of the other jurisdictions, but rather focusing on "the intent of the client at the time the communication is made." *Heidebrink,* at 394. For the attorney–client privilege to apply, the client must believe that he is consulting a lawyer, either directly or through an agent, in his legal capacity and is seeking professional legal advice. *State v. Dorman,* 30 Wn. App. 351, 359, 633 P.2d 1340 (1981), citing E. Cleary, *McCormick on Evidence* § 88 (2d ed. 1972).

Applying this criterion to the facts presented, I would hold that Moriwaki did not have this intent. Nothing in the record indicates that Moriwaki believed he was consulting an attorney or an attorney's agent for the purpose of

obtaining legal advice. Moriwaki merely spoke to a claims adjuster on the phone when the claims adjuster called him. Moriwaki had not initiated the contact and no litigation was pending. Also, at the time the statement was taken, the insurance company conceivably had interests other than protecting the rights of Moriwaki. The statement which was taken could be used by the insurance company for any business purpose, including a purpose that would have been adverse to Moriwaki's interests.

The attorney–client privilege should not be extended summarily to statements made by an insured to his insurance company. If the insured makes the statement with the intent that he is consulting a lawyer for legal advice and his statement cannot be used against his interests by the insurance company (because the company is only acting as an agent for the retained attorney), then the attorney–client privilege could be properly invoked. However, that situation is not presented in this case. I would affirm the Court of Appeals determination that Moriwaki's statement to the claims adjuster was not privileged.

## Work Product Immunity Rule

CR 26(b) provides, in pertinent part:

**(b)** . . . Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:

. . .

(3) *Trial Preparation: Materials* . . . [A] party may obtain discovery of documents and tangible things otherwise discoverable . . . and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attor-

ney or other representative of a party concerning the litigation.

The threshold question that must be addressed to determine whether a statement made by the insured to the insurance company is protected by the rule is whether the document was "prepared in anticipation of litigation". CR 26(b)(3). If not prepared in anticipation of litigation, then the document is discoverable. If prepared in anticipation of litigation, then the document is not discoverable, unless the party seeking it can show substantial need and no substantial equivalent for the document.

Moriwaki argued and the trial court found that Moriwaki's statement was taken in anticipation of litigation and that there had not been a showing of substantial need and no substantial equivalent. Heidebrink argued and the Court of Appeals found that the statement was not taken in the anticipation of litigation but rather it was taken in the ordinary course of business. Thus, the Court of Appeals held the statement was discoverable. The majority reverses the Court of Appeals finding the statement is not discoverable.

I agree with the majority that there is no distinction between attorney and nonattorney work product. Majority opinion, at 396. A statement taken by an insurer is explicitly covered by the rule, subject to the requirement that the statement is being taken in anticipation of litigation. I also agree with the majority's decision to find inapplicable those cases determined before the amendment to CR 26(b)(3) and those cases involving statements or reports from persons other than the insured. Majority opinion, at 396–99. I agree with the majority that two cases from other jurisdictions are on point.

In *Fireman's Fund Ins. Co. v. McAlpine,* 120 R.I. 744, 391 A.2d 84 (1978), the court found statements by insureds to their insurance companies were prepared in "anticipation of litigation" by adopting the following rationale:

In our litigious society, when an insured reports to his insurer that he has been involved in an incident involving

another person, the insurer can reasonably anticipate that some action will be taken by the other party. The seeds of prospective litigation have been sown, and the prudent party, anticipating this fact, will begin to prepare his case. Although a claim may be settled short of the instigation of legal action, there is an ever–present possibility of a claim's ending in litigation. The recognition of this possibility provides, in any given case, the impetus for the insurer to garner information regarding the circumstances of a claim.

(Citation omitted.) *Fireman's Fund,* at 753–54.

The opposite conclusion was reached in *Henry Enters., Inc. v. Smith,* 225 Kan. 615, 592 P.2d 915 (1979), where the court found a statement by an insured to his insurance company was not prepared in anticipation of litigation and therefore was discoverable. The court stated:

We are not unmindful that, insofar as insurance companies, and particularly those in the casualty field, are concerned, litigation is a very real potential; it is ever on the horizon. But the fact remains that the investigation of potential claims is an integral part of the insuror's business. Investigations are made regularly and in the ordinary course of business. They are necessary if the companies are to make intelligent dispositions of claims. They are necessary also if a carrier is to perform adequately the duties and obligations towards its insureds which are imposed upon it by law. Also, most claims are settled, one way or another, without resort to the courts.

It is apparent to us, and we hold, that the initial investigation of a potential claim, made by an insurance company prior to the commencement of litigation, and not requested by or made under the guidance of counsel, is made in the ordinary course of business of the insurance company, and not "in anticipation of litigation or for trial" . . .

*Henry Enters.,* at 623.

The majority states its belief that it is inappropriate to subscribe to either rationale entirely but then it does subscribe to one rationale. It finds that because of the insurance contract requirement for representation, the statements of the insured to the insurance company are

protected by CR 26(b)(3). Majority opinion, at 400. The majority then makes a very broad holding that "a statement made by an insured to an insurer following an automobile accident is protected from discovery under CR 26(b)(3)." Majority opinion, at 401. The majority to reach these conclusions has, without acknowledging it, adopted the rationale of the *Fireman's Fund* case.

It is incorrect to state that "[i]f the statement were made directly to the selected attorney, it would obviously have been made in anticipation of litigation." Majority opinion, at 400. The determination of whether a statement is made in anticipation of litigation involves more than the mere question of who is the recipient.

I believe it is incorrect to hold that the initial inquiry or involvement by an insurance company regarding the possibility of a potential claim involving one of its insureds is made in anticipation of litigation. The initial inquiry is a gathering of facts from which the insurance company determines whether there may be a claim and if so whether the claim is covered by the insurance contract. I would hold the initial inquiry is always made in the ordinary course of the insurer's business. Only after the initial discussion of the claim can the insured and the insurance company determine whether the incident is covered and whether litigation can be anticipated. If litigation is anticipated, subsequent statements made by the insured would be protected. This determination accords broad and liberal treatment to the discovery rules and achieves their goal of ensuring mutual knowledge of all relevant facts. *Hickman v. Taylor*, 329 U.S. 495, 501, 507, 91 L. Ed. 451, 67 S. Ct. 385 (1947).

Because of my determination that the involved statement made by Moriwaki to his insurance company could not have been made in anticipation of litigation, I do not reach the issue of whether Heidebrink has made the requisite showing of substantial need and no substantial equivalent for the information.

CONCLUSION

I would hold that the statement by the insured to his insurance company in this case is not protected by either the attorney–client privilege or the work product immunity rule. I would order disclosure of the statement.

BRACHTENBACH and DORE, JJ., concur with GOODLOE, J.