IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| MONICA DIAZ BARRIGA FIGUEROA as parent and natural guardian of BRAYAN MARTINEZ, a minor, | ) ) ) ) | No. 34671-4-III |
| Appellant, | ) ) | |
| v. | ) ) | PUBLISHED OPINION |
| CONSUELO PRIETO MARISCAL, individually and the marital property thereof, if any, | ) ) ) ) | |
| Respondent. | ) ) | |

LAWRENCE-BERREY, C.J. — Monica Diaz, as parent and guardian for her son

Brayan Martinez, appeals from a defense verdict finding Consuelo Prieto not negligent

for driving over and fracturing Brayan's lower right leg. Ms. Diaz primarily argues that

the trial court erred in admitting the personal injury protection (PIP) application to her

insurer. She argues that the PIP application was hearsay and confidential work product.

We hold that the PIP application was not hearsay because it was an admission by a

party opponent under ER 801(d)(2)(iv). However, we hold that the trial court erred when

it failed to extend work product protection to the PIP application and that this error was

prejudicial. We therefore reverse the jury's verdict and grant Ms. Diaz a new trial.

FACTS

On October 30, 2013, Ms. Prieto was driving her minivan southbound on North Cedar Avenue in Pasco, Washington. Her teenage daughter, Melissa Guzman, was riding in the front passenger seat. There were vehicles, including an orange pickup, parked on the right side of the road. As Ms. Prieto passed the orange pickup, she heard a noise on the passenger side of her van and felt her van jump a little. She stopped, got out, and saw eight-year-old Brayan Martinez lying near the pickup and next to his bicycle. It was evident that Brayan's lower right leg had been run over by one of the minivan's tires. Melissa called 911. Brayan was taken to the hospital and treated for his injuries.

A police officer arrived at the scene to investigate and prepare a report. The officer spoke to a few people, including Ms. Prieto and her daughter. No one the officer spoke to actually *saw* what happened. Nevertheless, the officer's report indicated that Brayan had ridden his bike from between two parked cars and into the road.

Ms. Diaz, a monolingual Spanish speaker, contacted a law firm and sought its assistance in making a claim under her insurance policy to pay for medical expenses. On November 21, 2013, Ms. Diaz met with an employee of the law firm who spoke Spanish. Following this meeting, a legal assistant asked Ms. Diaz to sign a blank form that the

assistant later completed. The form was an application for PIP benefits. Although PIP

benefits are available regardless of fault, the form had a line that required the applicant to

provide a brief description of the accident. The legal assistant used a copy of the police

report to complete the form. The legal assistant wrote:

> Vehicle was traveling on North Cedar when child on a bike rode into road.
> There were 2 parked cars on the road creating a blinde [sic] spot for the
> driver. Child was struck and had right leg ran over.

Ex. 101 at 1.

Ms. Diaz, on behalf of her son, brought suit against Ms. Prieto. Ms. Diaz hired an

accident reconstruction expert to assist in establishing liability. The expert, Patrick

Stadler, met with Brayan at the accident scene to determine how the accident happened.

Brayan explained that prior to the accident, he rode his bicycle from the sidewalk

into the roadway in front of the orange pickup to make U-turn type maneuvers. Defense

counsel later deposed Brayan. Brayan's statements during the deposition varied enough

that Mr. Stadler determined he should meet with Brayan again. Brayan's second

explanation to Mr. Stadler was that his shoelace became tangled in his bike chain and that

the bike came to rest near the front of the orange pickup. He was stopped and leaning

over his bike with his right leg extended out in the road when the minivan ran over his

leg.  Brayan did not mention the shoelace becoming stuck during his initial interview with

Mr. Stadler.

The case proceeded to trial.  During opening statements, Ms. Prieto referred to the

PIP application.  After opening, Ms. Diaz orally requested that the PIP application be

excluded:

> Your Honor, . . . in defendant's opening [defense counsel] brought up some piece of evidence that I think he might try to bring up again.
>
> > [The] Personal Injury Protection application.  The personal injury protection application is . . . .
> >
> > . . . a first-party application and privilege is not waived when you submit something to first-party insurance.  And, in fact, first-party insurance is not supposed to share the PIP file with defense without permission of plaintiff.
> >
> > In this case, [defense counsel] somehow got a copy of the PIP application.  This raises a number of concerns. . . .
> >
> > So even though [defense counsel] already referenced it in his opening, and I objected to it then, I would move to exclude any further reference to this Personal Injury Protection application.

RP at 119-21.

In response, defense counsel argued:

> First of all, this document is not privileged. . . .
>
> > . . . .
> >
> > The PIP insurance coverage is, in essence, a no fault benefit provided on the insurance policy insuring Ms. Prieto.  Okay?
> >
> > So it's her insurance company that's providing this benefit of medical coverage to Brayan.[1]

---

[1] We granted oral argument and asked questions to shed light on these statements

RP at 121-22.

The trial court then heard voir dire testimony from Ms. Diaz. Ms. Diaz explained that her attorney's legal assistant directed her to sign the blank PIP application. The trial court determined that the form was prepared by plaintiff's agent, constituted an admission against interest, and therefore denied Ms. Diaz's request to exclude it. The trial court stated that the document was not privileged but provided no analysis in making its conclusion.

During trial, Mr. Stadler opined that Brayan could not have been struck while riding his bike. His opinion was based on the fact that the frame of the bike was not damaged and that Brayan's injuries did not include any impact or sliding on the pavement. It was his opinion that Brayan had been stationary and adjacent to the orange pickup when Ms. Prieto's minivan ran over his extended right leg.

---

by counsel. During oral argument, defense counsel admitted that he did not receive the PIP application through discovery, and that both parties had the same insurance company. Wash. Court of Appeals oral argument, *Barriga Figueroa v. Prieto Mariscal*, No. 34671-4-III (Jan. 31, 2018) at 23 min., 57 sec. to 24 min. 52 sec., https://www.courts.wa.gov /appellate_trial_courts/appellateDockets/index.cfm?fa=appellateDockets.showDateList& courtId=a03&archive=y. Because only Ms. Diaz and her insurer had the PIP application, and because Ms. Diaz did not provide the PIP application to defense counsel, we infer that defense counsel received the PIP application directly from the parties' shared insurance company.

Ms. Diaz asked one of her medical experts how Brayan had described the accident. On cross-examination, Ms. Prieto asked the expert about statements in the medical records that indicated Brayan had ridden his bike out into the road. Ms. Diaz objected on the basis of speculation and hearsay. The trial court noted that the expert had reviewed and relied on the medical record, and overruled the objection on the basis that Ms. Diaz had opened the door during her questions to her expert.

Defendant's accident reconstruction expert, Eric Hunter, testified that it would have taken Ms. Prieto 1.6 seconds or less to stop once she saw an object in the roadway. He also testified that accident reconstruction experts rely on police reports when forming opinions and that he relied on the police report for this accident. Ms. Prieto began reading the police report into evidence, and Ms. Diaz objected. The trial court overruled the objection but qualified its ruling by saying the jury would be instructed that the police report was admitted only for a limited purpose and could not be considered as substantive evidence. Ms. Prieto did not continue reading the police report. Rather, she then focused on the description of the accident contained in the PIP application.

After both sides presented their evidence and closing arguments, the case was submitted to the jury. The jury returned a verdict finding Ms. Prieto not negligent. Ms.

Diaz moved for judgment notwithstanding the verdict, and the trial court denied her

motion. Ms. Diaz appeals.

ANALYSIS

THE PIP APPLICATION

Ms. Diaz argues that the trial court erred when it admitted the PIP application. She

argues that the PIP application was hearsay and was confidential. We review these two

claims independently.

*1. The PIP application was not hearsay*

The trial court's factual determination regarding whether a statement falls within a

hearsay exception will not be disturbed absent an abuse of discretion. *State v. Strauss*,

119 Wn.2d 401, 417, 832 P.2d 78 (1992).

The unrefuted evidence established that a legal assistant for Ms. Diaz's attorney

prepared the PIP application based on the police report, and the police report was not

based on eye-witness evidence. Ms. Diaz argues that the PIP application has multiple

levels of hearsay, is speculative and, for these reasons, the trial court erred in admitting it.

We disagree.

ER 801(d) defines certain statements that are not hearsay. That rule provides in

relevant part: "A statement is not hearsay if . . . [t]he statement is offered against a party

and is . . . a statement by the party's agent or servant acting within the scope of the authority to make the statement for the party." ER 801(d)(2)(iv).

Ms. Diaz hired an attorney to assist her in making a PIP claim. A legal assistant for the attorney completed the PIP application. During oral argument, Ms. Diaz conceded that a legal assistant could speak for a law firm by virtue of being part of that firm.[2] This is dispositive. We conclude that the legal assistant was a speaking agent for Ms. Diaz and that the statement contained in the PIP application was made within the legal assistant's scope of authority.

Ms. Diaz implies that because the legal assistant's statement was derived from the police report instead of from Ms. Diaz, the statement was not admissible. She offers no authority for this.[3] ER 801(d)(2)(iv) does not explicitly require that the agent or servant have firsthand knowledge or direct knowledge from the party. Nor does the rule

---

[2] Wash. Court of Appeals oral argument, *supra*, at 2 min. 37 sec. to 3 min. 17 sec.

[3] Ms. Diaz cites *Lockwood v. A C & S, Inc.*, 109 Wn.2d 235, 744 P.2d 605 (1987) for the proposition that the agent must have authority to speak for the principal. Here, Ms. Diaz's law firm had authority to speak for Ms. Diaz by completing the PIP application.

Ms. Diaz fails to cite *Lockwood* for the proposition that an agent's statement must not be based on speculation. *Lockwood* notes, "arguments for exclusion of evidence [under ER 801(d)(2)] have been based on the theory that statements of an agent without firsthand knowledge could too easily be based on rumor or speculation to be routinely admitted." *Id.* at 263. *Lockwood* did not accept the argument, but instead noted the argument did not apply because the agent's statement was based on scholarly papers. *Id.*

explicitly require the agent's statement to be nonspeculative. The vast majority of

jurisdictions and the Federal Rules of Evidence do not require firsthand knowledge as a

requirement for the admissibility of an admission. 2 MCCORMICK ON EVIDENCE § 255, at

139-40 (John W. Strong ed., 5th ed. 1999). Washington courts have relaxed the rules

regarding personal knowledge with respect to admissions by an agent of a party because a

strict rule totally excluding the admission would be worse than allowing the trier of fact

to hear the admission. 5B KARL B. TEGLAND, WASH. PRACTICE: EVIDENCE LAW AND

PRACTICE § 801.38, at 406-07 (6th ed. 2016). Here, the trial court properly found that the

legal assistant was an agent of Ms. Diaz and that her statement was within the scope of

her agency.[4] Accordingly, the trial court did not err in concluding that the PIP application

was not hearsay.[5]

---

[4] Courts interpreting the parallel federal rule, FED. R. EVID. 801(d)(2)(D) have held that admissions are granted generous treatment when determining admissibility and guarantees of trustworthiness are not required. *Aliotta v. Nat'l R.R. Passenger Corp.*, 315 F.3d 756, 761 (7th Cir. 2003) (citing FED. R. EVID. 801, Advisory Committee Note).

[5] The concern noted in *Lockwood* can be allayed in two ways. First, a trial court can exclude a speculative statement under ER 403 for a variety of reasons. Second, even if the trial court admits a speculative statement, the statement's opponent can present evidence that questions the statement's accuracy. Here, Ms. Diaz presented significant evidence that called into question the statement's accuracy.

2. *The PIP application was confidential work product*

Ms. Diaz argues that the trial court erred in admitting the PIP application because

the application was confidential work product.[6]  We agree.

Ms. Diaz cites *Harris v. Drake*, 152 Wn.2d 480, 99 P.3d 872 (2004).  There,

Harris was injured when Drake rear-ended him.  *Id.* at 484.  Harris cooperated with his

insurer's request to undergo an independent medical examination (IME) in conjunction

with Harris's application for PIP benefits.  *Id.*

Later, in litigation between Harris and Drake, Drake sought to have the PIP IME

doctor testify about his earlier IME report.  *Id.*  Drake did not obtain the IME report

through Harris or Harris's attorney.  *Id.*  Harris objected to the doctor testifying.  *Id.*  The

trial court eventually agreed with Harris that the doctor could not testify.  *Id.* at 485.

Harris prevailed, and Drake appealed.

In affirming the trial court, the court noted that an insured was contractually

required to cooperate with his insurer or risk losing coverage.  *Id.* at 488.  The court

determined that this contractual obligation creates a reasonable expectation in the insured

---

[6] Ms. Diaz did not assign error to the trial court's ruling that the PIP application was not confidential work product.  But she raised this argument in her opening brief, she cited relevant authority in support of it, and Ms. Prieto responded to it.  The issue therefore is appropriately before us.  *See State v. Olson*, 126 Wn.2d 315, 323, 893 P.2d 629 (1995); *see also Tham Thi Dang v. Ehredt*, 95 Wn. App. 670, 677, 977 P.2d 29

10

that his statements to his insurer would be kept confidential. *Id.* The court concluded that

the trial court properly gave work product protections to the IME report and properly

excluded the PIP IME doctor from testifying. *Id.* at 488-89.

Like *Harris*, in the present case, Ms. Diaz had a contractual obligation to cooperate

with her insurer, which included an obligation to complete the PIP application. She

therefore had a reasonable expectation that her PIP application would be kept confidential

and not be shared with opposing counsel. It would work an injustice to permit Ms. Prieto

to surreptitiously obtain Ms. Diaz's PIP application and use it against Ms. Diaz simply

because the two shared the same insurance company. The injustice is more pronounced

given that the description of the accident in the PIP application was taken from a police

officer's speculation, unsupported by any eyewitness, and inconsistent with the physical

evidence. We hold that the trial court erred when it declined to give work product

protections to the PIP application.[7]

_____

(1999); *Viereck v. Fibreboard Corp.*, 81 Wn. App. 579, 915 P.2d 581 (1996).

[7] The dissent argues that excluding the PIP application interferes with the search for the truth. Dissenting opinion at 7-8. Although excluding work product sometimes interferes with the search for the truth, that is not the case here. Ms. Diaz signed a blank PIP application. That application was later completed by a legal assistant, who merely wrote down what a police officer had written in his accident report. The officer spoke to three people, none of whom saw what happened. Had the officer testified, his belief that Brayan rode his bike out into the road would have been stricken as hearsay and speculative.

> 3. *The trial court's error in admitting confidential work product was prejudicial*

An erroneous evidentiary ruling does not result in reversal unless the error was prejudicial. *Driggs v. Howlett*, 193 Wn. App. 875, 903, 371 P.3d 61, *review denied*, 186 Wn.2d 1007, 380 P.3d 450 (2016). Here, Ms. Prieto repeatedly claimed throughout trial that Brayan was hit after he rode his bicycle between two parked cars and into the road. She repeated this claim in her opening statement, during the examination of several witnesses, and throughout her closing argument. Her claim was based almost entirely on the PIP application.

An argument can be made that the error in admitting the PIP application was not prejudicial because the same evidence was admitted from the police report and at least one medical record. Had Ms. Prieto made this argument, we would have rejected it.

First, the trial court refused to admit the police report as substantive evidence. Second, the police report was not read into the record or admitted into evidence. Third, Ms. Prieto focused almost entirely on the PIP application, not the police report or the medical records. Viewing the evidence as a whole, we believe that the improper admission of the PIP application was prejudicial. Given our resolution of this issue, we need not consider Ms. Diaz's other claims of error.

No. 34671-4-III
*Diaz v. Mariscal*

Reversed.

_____
Lawrence-Berrey, C.J.

I CONCUR:

_____
Fearing, J.

13

No. 34671-4-III

KORSMO, J. (dissenting) — Although I agree with the majority's analysis of the hearsay issue and its conclusion that the personal injury protection (PIP) application was not hearsay, I disagree with the decision to consider and resolve a case on a theory barely raised by the appellant in the trial court and not argued on appeal. Moreover, it would perpetrate a fraud on the court to exclude the PIP application and allow the appellant to testify without fear of self-contradiction. The judgment should be affirmed.

As to the procedural matter, the majority clearly errs in making up its own theory that the PIP application constitutes privileged work product of the insured. The factual basis for that theory was not established in the trial court. Indeed, the majority makes its own fact-finding concerning the PIP application when it "infers" that the respondent received the document from the shared insurance company. Majority opinion at 4 n.1. Appellate courts have rejected appellate fact-finding since the Eisenhower administration. *See Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959). Having not attempted to establish the facts in the trial court, the appellant understandably did not pursue the issue in this court. There is simply no factual basis for the majority's speculative analysis that the document was privileged and was obtained in an improper manner.

No. 34671-4-III
*Diaz v. Mariscal*

There were plenty of opportunities to pursue this issue in the trial court. As noted by the majority, appellant raised a privilege objection and the respondent denied there was any privilege. Appellant did not attempt to explain further how the document ended up with the respondent or why it was privileged. Since the issue was not explored more thoroughly in the trial court—and since this court does not make factual determinations—there simply are not sufficient facts in the record to address this issue. In addition, the failure to develop the record at trial means that we also cannot decide who holds the privilege and whether it was waived.

Appellant also had plenty of opportunity to make that record. In addition to the original objection in the trial court, the plaintiff sought a new trial due to alleged violations of a pretrial ruling. The failure to exclude the supposedly privileged document was not raised in that motion. When the case was appealed to this court, the appellant likewise did not pursue the privilege argument. There was no assignment of error to the trial court's ruling on the privilege claim. Appellant did not brief or argue the issue.[1] That should have been the end of the matter in this court. *See State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995) ("However, the Court of Appeals should not have reached

_____

[1] Appellant mentions the privilege theory and its application to the PIP application in the briefing only in conjunction with her claim that the trial court wrongly found that a hearsay exception applied. *See* Br. of Appellant at 17-18. Appellant did not argue that the application form itself should have been excluded as an allegedly privileged document. Similarly, respondent did not (and had no reason to know that she should) address the argument.

2

any issue regarding this portion of Closson's testimony because no issue was raised in Powell's briefs to the Court of Appeals. RAP 10.3(a), (g).").

RAP 12.1(a) states the governing rule: "the appellate court will decide a case only on the basis of issues set forth by the parties in their briefs."[2] Our case law is rife with examples of appellate courts applying that principle and recognizing that an issue is not properly before the court. *See, e.g., Matter of Rhem*, 188 Wn.2d 321, 328, 394 P.3d 367 (2017) (noting that appellate courts "should not be placed in a role of crafting issues for the parties"); *State v. Johnson*, 119 Wn.2d 167, 171, 829 P.2d 1082 (1992) (declining to address a constitutional issue as neither party briefed the issue); *State v. Sims*, 1 Wn. App. 2d 472, 485 n.2, 406 P.3d 649 (2017) ("an appellate court will not decide a case on the basis of a theory not briefed by the parties."); *Washington Prof'l Real Estate LLC v. Young*, 163 Wn. App. 800, 818 n.3, 260 P.3d 991 (2011) ("We will not decide a case on the basis of issues that were not set forth in the parties' briefs."); *Holder v. City of Vancouver*, 136 Wn. App. 104, 107, 147 P.3d 641 (2006) ("A party abandons an issue by failing to pursue it on appeal by . . . failing to brief the issue."); *1515-1519 Lakeview Blvd. Condo. Ass'n v. Apt. Sales Corp.*, 102 Wn. App. 599, 610, 9 P.3d 879 (2000), *rev'd*

---

[2] The only exception is recognized in RAP 12.1(b) that advises appellate courts to notify the parties and provide an opportunity to present written argument if the appellate court believes an issue should be considered. More typically, appellate courts simply recognize that an evidentiary issue is waived if not briefed in the appeal. *E.g., Powell*, 126 Wn.2d at 258.

3

*in part and remanded*, 146 Wn.2d 194, 43 P.3d 1233 (2002) ("An issue is not properly before an appellate court if not set forth in the party's brief, even if raised at oral argument.").

Accordingly, we should not be engaging in this discussion in the least. But having done so, the majority further compounds the error by awarding plaintiff a new trial on the theory that her original inconsistent statement to her insurance company was somehow a privileged document of her own that must be kept from the jury. On this record, I doubt that is the case. When a work product privilege is recognized, it typically exists because litigation is expected. *Heidebrink v. Moriwaki*, 104 Wn.2d 392, 396, 706 P.2d 212 (1985). The work product privilege is, after all, an *attorney* work product privilege. *Hickman v. Taylor*, 329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (1947). It only extends to the work product of nonattorneys if the document was prepared for litigation. *Heidebrink*, 104 Wn.2d at 396. Privileges are disfavored because they obstruct the truth-seeking process and, for that reason, are narrowly construed. As observed in the context of the statutory attorney-client privilege:

> Because the privilege sometimes results in the exclusion of evidence otherwise relevant and material, and thus may be contrary to the philosophy that justice can be achieved only with the fullest disclosure of the facts, the privilege is not absolute; rather, it is limited to the purpose for which it exists. *Dietz v. Doe*, 131 Wn.2d 835, 843, 935 P.2d 611 (1997); *see also Baldrige v. Shapiro*, 455 U.S. 345, 360, 102 S. Ct. 1103, 71 L. Ed. 2d 199 (1982) (Statutes establishing evidentiary privileges must be construed narrowly because privileges impede the search for the truth.).

4

*VersusLaw, Inc. v. Stoel Rives, LLP*, 127 Wn. App. 309, 332, 111 P.3d 866 (2005); *accord Lowy v. PeaceHealth*, 174 Wn.2d 769, 778, 280 P.3d 1078 (2012).

It is not conceivable to me that every claim made to one's own insurance company is made with litigation in mind, let alone that run-of-the-mill business records are privileged due to the subjective view of either the insured or the insurer that litigation might result. We have a hearsay exception for business records for a reason, and that exception even serves to waive the constitutional protection to confront witnesses guaranteed by the Sixth Amendment to the United States Constitution. *E.g., State v. Ziegler*, 114 Wn.2d 533, 789 P.2d 79 (1990). A routine claim form such as this one ("please pay the emergency room for treating my son who was hit by a car") is processed in the normal course of business, not in anticipation of litigation.

Whether the privilege exists is dependent upon a review of the facts of the relationship between insurer and insured at the time of the statement and the expectations of the parties. *Heidebrink*, 104 Wn.2d at 400. In that case a privilege existed because the insured reasonably expected that the information provided would be passed on in confidence to the attorney who subsequently would be hired to defend him. *Id.* at 399-401 ("we hold that a statement made by an insured to an insurer following an automobile accident is protected from discovery."). Similarly, an independent medical examination required by a PIP claim was the work product of the *insurer* and was not discoverable by

5

a third party once the insurance company asserted the privilege.[3] *Harris v. Drake*, 152 Wn.2d 480, 492, 99 P.3d 872 (2004). An insured would reasonably believe her medical information would be kept confidential by her insurance company. *Id.* at 488.

Unlike these lead cases, the alleged privilege found in this case is being asserted by the insured, not the insurer, and involves a statement made for the purpose of showing the claim was within the scope of the PIP coverage in order to obtain medical benefits for Brayan. It was not necessarily a statement made in anticipation of litigation since the Diaz family was preparing to sue Ms. Mariscal rather than its own insurance company.

While the preceding are all factual and prudential concerns arising from the majority's decision to decide a factual question not presented in the briefing to this court, the real problem with going down this unbriefed road is that it focuses on the wrong aspect of the alleged privilege. The question is not whether counsel for Ms. Mariscal improperly[4] obtained the document, but whether the plaintiff is allowed to perpetrate a fraud on the court by excluding the inconsistent original statement from the jury's consideration. The very reasons that the majority believes this information was harmful

---

[3] This aspect of *Harris* hurts the majority's argument here. The privilege does not belong to appellant, but to appellant's insurance carrier, who arguably is free to decide whether it will or will not assert the privilege.

[4] If the plaintiff was damaged by some unlawful act, the remedy should be to sue the insurer for damages. Since the insurer was the privilege holder, however, I question whether anything untoward occurred here at all.

6

are the very reasons it should be admitted in order to advance the jury's truth-finding function.

Whatever the basis for the new privilege created by the majority here, it should give way for the greater public policy of preventing a fraud on the court. Even evidence suppressed due to a violation of the constitution is admissible at trial to counter a defendant's contrary testimony at trial. *E.g.*, *Oregon v. Elstad*, 470 U.S. 298, 307, 105 S. Ct. 1285, 84 L. Ed. 2d 222 (1985) (citing *Harris v. New York*, 401 U.S. 222, 91 S. Ct. 643, 28 L. Ed. 2d 1 (1971)) (suppressed statements); *United States v. Havens*, 446 U.S. 620, 100 S. Ct. 1912, 64 L. Ed. 2d 559 (1980) (physical evidence); *Walder v. United States*, 347 U.S. 62, 74 S. Ct. 354, 98 L. Ed. 503 (1954) (same). As forcefully stated in *Walder*:

> It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths. Such an extension of the Weeks doctrine would be a perversion of the Fourth Amendment.

*Id.* at 65. I would presume the civil justice system is at least as concerned with truth finding as the criminal justice system. I can think of no policy reason why the majority's new privilege should be stronger than the protections of our constitution.

Most privileges exist to promote honest reporting of facts. *Coburn v. Seda*, 101 Wn.2d 270, 274, 677 P.2d 173 (1984) (attorney client privilege). It is a perversion of that

7

No. 34671-4-III
*Diaz v. Mariscal*

purpose to authorize perjury by excluding a party's contrary report of events and let the jury hear only the current version. The privilege should be honored at the discovery level but, once the information has been disclosed, even if wrongly so, the purpose of the privilege is not furthered by allowing it to abuse the truth-seeking function of trial. Even assuming that the PIP application statement was privileged, it was properly admitted here to rebut the contrary version of events that plaintiff was asserting at trial. She was able to explain why that initial version was incorrect, and the jury was able to listen to the explanation and give the statement any weight it deserved. This issue was handled fairly for both sides.

Even if the issue is properly before us and even if the statement is privileged, the evidence was properly put before the jury to contradict the version of events presented at trial. I dissent from the decision to exclude the initial report and grant a new trial.

_____
Korsmo, J.

8