[No. 22388-4-III.   Division Three.   March 15, 2005.]

KAREN STEPHENS, *Individually and as Parent and Guardian, Appellant*, v. MINA GILLISPIE ET AL., *Defendants*, JEREMY GILLISPIE, *Respondent*.

David A. Thompson, for appellant.

David L. Petersen (of Roach & Petersen, L.L.P.), for respondent.

¶1 SWEENEY, J. — This is a dispute over the meaning of a standard stipulation and order of dismissal, and specifically whether it was intended to include respondent, Jeremy Gillespie.[1] The claims against him had been reduced to judgment. We conclude that the appellant[2] has made a sufficient showing to invoke the context rule articulated in *Berg v. Hudesman*[3] and remand for fact finding on the intention of these parties when they executed the stipulation. We also conclude that the affirmative representations of intent by Mina and Bob Gillespie waived their attorney-client privilege as to their intent and understanding of the stipulation. We, accordingly, reverse the trial court's clarification order dismissing Karen Stephens' postjudgment claims against Jeremy Gillespie and permit discovery of

---

[1] The caption on this case and a previous case spelled the Gillespie name incorrectly and we use the correct spelling throughout this opinion.

[2] S.S. and L.S. are no longer minors and accordingly Karen Stephens is no longer the guardian, nor is Ms. Stephens the nominal plaintiff. We, nonetheless, refer to her as plaintiff for consistency and to protect the identities of the victims of these sexual assaults.

[3] *Berg v. Hudesman*, 115 Wn.2d 657, 801 P.2d 222 (1990).

certain matters alleged to fall within the attorney-client privilege.

## FACTS

¶2 Ms. Stephens sued Mina, Bob, and Jeremy Gillespie after Jeremy molested her children, S.S. and L.S. Following a jury trial, the court entered a judgment in 1994 against Jeremy Gillespie in the amount of $600,000, and against both Mina and Bob Gillespie in the amount of $100,000. Mina and Bob Gillespie appealed. Jeremy Gillespie did not appeal. We reversed the judgment and granted Mina and Bob Gillespie a new trial in 1996. *Stephens v. Gillispie*, noted at 84 Wn. App. 1007 (1996). Mina and Bob then apparently settled their case and in furtherance of that settlement executed a release of claims:

> [T]he undersigned release and forever discharge MINA and BOBBIE GILLESPIE, and AMERICAN STATES INSURANCE COMPANY . . . from any and all rights, claims, demands and damages of any kind, known or unknown . . . in any way arising from that certain incident which occurred in Benton County . . . .

Clerk's Papers (CP) at 151, 154. Simultaneously, they also executed a stipulation and order of dismissal, which is the subject of this appeal.

¶3 Later Ms. Stephens tried to execute on the judgment against Jeremy. Ms. Stephens obtained an order to show cause requiring Jeremy to show why the stipulation and order of dismissal should apply to him. The court clarified the 1998 stipulation by concluding that the term "parties" included Jeremy. Ms. Stephens then filed a motion for reconsideration and asked to depose Mina and Bob's former attorney, Stephen Osborne. The court denied the motion for reconsideration but allowed a deposition of Mr. Osborne limited by the attorney-client privilege.

¶4 Mina and Bob Gillespie filed several declarations with the court of their intent in executing the stipulation and dismissal:

Our intent is that Order of Dismissal included all of the Defendants. We would have never allowed our attorney to make a representation that was contrary to our best interests and the best interests of our son, whether he represented Jeremy or not, as we indicated in our previous declarations dated May 28, 2003. We are not saying that conversations between us and our attorney did or did not happen regarding our intent. We are representing that our intent was as stated in our declarations dated May 28, 2003. We have not and will not discuss the actual conversations we had with our attorney, Steve Osborne.

CP at 123.

¶5 Ms. Stephens appeals the order of clarification, the denial of her motion for reconsideration, and the court's refusal to permit her to fully question Mr. Osborne.

## DISCUSSION

STIPULATION AND ORDER OF DISMISSAL

¶6 The first question is whether issues of fact remain over the effect of the 1998 stipulation and order of dismissal. Specifically, did it include the unappealed and unsatisfied judgment against Jeremy Gillespie?

¶7 Ms. Stephens contends that the 1998 stipulation did not dismiss the 1994 final judgment against Jeremy Gillespie. First, she argues that only *claims* or *actions* are referenced in the stipulation itself. And any claim or action against Jeremy had been reduced to *judgment*. There was, therefore, nothing to dismiss by the stipulation and order of dismissal. Next the lawyer negotiating the settlement, Mr. Osborne, represented only Mina and Bob despite the general reference in the stipulation and order of dismissal to "the parties." Mr. Osborne had no authority to represent Jeremy and therefore no authority to negotiate or execute a dismissal on behalf of Jeremy.

¶8 Jeremy Gillespie responds that the stipulation and order of dismissal is plain on its face. The phrase "the parties hereto" must include Mina, Bob, and Jeremy

Gillespie. And the phrase "the above-entitled action" refers to the cause number of the only action which included Jeremy. If the parties meant to dismiss only the action against Mina and Bob Gillespie, the stipulation and order of dismissal could easily have been limited to them.

■■ ¶9 Stipulated agreements are interpreted as contracts. *Martinez v. Kitsap Pub. Servs., Inc.*, 94 Wn. App. 935, 942, 974 P.2d 1261 (1999). The interpretation of a contract is usually a question of law which we would review de novo. *Id.* at 943-44. But the case of *Berg v. Hudesman* expanded the circumstances under which a finder of fact must consider extrinsic evidence when passing upon the meaning of the written words:

> "[P]arol evidence is admissible to show the situation of the parties and the circumstances under which a written instrument was executed, for the purpose of ascertaining the intention of the parties and properly construing the writing. Such evidence, however, is admitted, not for the purpose of importing into a writing an intention not expressed therein, but with the view of elucidating the meaning of the words employed."

*Berg v. Hudesman*, 115 Wn.2d 657, 669-70, 801 P.2d 222 (1990) (quoting *J.W. Seavey Hop Corp. v. Pollick*, 20 Wn.2d 337, 348-49, 147 P.2d 310 (1944)).

■ ¶10 *Berg* rejected the traditional requirement that the document be ambiguous before extrinsic evidence may be introduced to interpret the meaning of written words. *Berg*, 115 Wn.2d at 669. " 'Even though words seem on their face to have only a single possible meaning, other meanings often appear when the circumstances are disclosed.' " *Id.* at 668 (quoting RESTATEMENT (SECOND) OF CONTRACTS § 214(c) cmt. b (1981)). Where it appears, therefore, that there has been a misunderstanding between the parties, the court may consider extrinsic evidence of intent. *Id.*

¶11 And there are certainly facts here which bring into question the intent of these parties. Only Mina and Bob Gillespie appealed the original jury verdict entered against them; Jeremy did not. And so we could and did grant only

Mina and Bob a new trial, not Jeremy. Indeed, only Mina and Bob were represented throughout the trial, the appeal, and the eventual settlement, including the stipulation that is the subject of this dispute. The settlement was negotiated by Mina and Bob's lawyer after remand of the first appeal in this case. Who Ms. Stephens intended to dismiss as "the parties" is then fairly subject to some question.

¶12  In sum, these parties dispute the *meaning* of the written terms in the stipulated agreement. They dispute the meaning of the words actually used. The intent of the parties is relevant to that question. *Berg*, 115 Wn.2d at 668-70. How should the court interpret them? Extrinsic evidence of that intent is then admissible on the question. *Id.*

ATTORNEY-CLIENT PRIVILEGE—WAIVER

¶13  Ms. Stephens also argues here that the attorney-client privilege did not attach to the communications among Mina and Bob and their attorney. This is because what they intended had to be communicated to Ms. Stephens as part of the settlement negotiations, negotiations culminating in the release and the stipulation and order of dismissal. Ms. Stephens argues, alternatively, that even if the privilege does exist, Mina and Bob waived that privilege by declarations of their intent as to the stipulation and order of dismissal.

¶14  The central issue in this case is what these parties intended by the execution of this stipulation and order of dismissal, specifically whether they intended that Jeremy be included. What Mina and Bob intended by this stipulation and order of dismissal is not confidential. Indeed, it was the very core of the stipulation and order of dismissal. *Sappington v. Miller*, 821 S.W.2d 901, 904 (Mo. Ct. App. 1992).

¶15  And to allow Mina and Bob to "understand" one intention following discussions with, and negotiations by, their lawyer with Ms. Stephens and then represent to the court something different is tantamount to civil fraud

addressed in *Escalante v. Sentry Insurance Co.*[4] Ms. Stephens has then made an adequate showing of facts to invoke the fraud exception to the attorney-client privilege. *Escalante*, 49 Wn. App. at 394. Her showing includes: (1) the testimony of Mina and Bob's attorney that he did not represent Jeremy, (2) the claims against Jeremy had been reduced to judgment, and (3) the judgment remains unsatisfied. The in-camera proceeding to handle her challenge is spelled out in the *Escalante* case. *Id.*

¶16 The purpose of the attorney-client privilege is to encourage free and full discussion with an attorney. *Id.* at 393. But it cannot be asserted to perpetuate a fraud, even civil fraud. *Id.* at 394. Here, Mina and Bob assert unequivocally that it was their intent that their son's judgment be included in this stipulation and order of dismissal of all claims.

¶17 We reverse and remand the case for further proceedings in accordance with this opinion.

KATO, C.J., and BROWN, J., concur.

---

[4] 49 Wn. App. 375, 394, 743 P.2d 832 (1987).