# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| CHRISTINE RICHARDSON, | No. 48805-1-II |
| Respondent, | |
| v. | |
| GOVERNMENT EMPLOYEES INSURANCE COMPANY, | PUBLISHED OPINION |
| Petitioner. | |

MELNICK, J. — We granted Government Employees Insurance Company's (GEICO) motion for discretionary review of the trial court's discovery order compelling GEICO to produce privileged post-litigation[1] documents and information regarding Christine Richardson's underinsured motorist (UIM) bad faith claim. We conclude that the trial court abused its discretion by issuing the discovery order because it misapplied the law. We decline to award fees to either party. We reverse and remand.

## FACTS

On February 11, 2010, Richardson suffered multiple injuries after being involved in a motor vehicle accident. The at-fault driver settled and paid her United Services Automobile Association (USAA) insurance policy limits of $25,000 to Richardson.

---

[1] "Post-litigation" is a term the parties and the trial court use to describe actions that occurred after Richardson filed her complaint against GEICO on August 19, 2013. We use the term in this opinion as the parties and the trial court used it.

As a result of the accident, Richardson incurred $38,000 in medical bills. At the time of the accident, Richardson had an insurance policy with GEICO for $35,000 in personal injury protection (PIP) coverage, and $50,000 in first-party underinsured motorist (UIM) coverage. Richardson filed a claim for PIP benefits and submitted her medical bills to GEICO for payment. GEICO began to pay Richardson's PIP medical benefits. In July, GEICO required her to submit to a medical examination. Based on the examination, GEICO continued paying for chiropractic care for 12 additional weeks, but stopped paying for massage or physical therapy.

When GEICO stopped paying for Richardson's medical treatment, Richardson retained an attorney and demanded PIP arbitration. GEICO retained attorney Sharon Dear. In October 2011, the PIP arbitrator awarded Richardson her PIP policy limit of $35,000.

The following year, Richardson filed a UIM claim with GEICO. In December, GEICO sent a letter to Richardson stating that it had been waiting for additional medical records to complete its evaluation of her claim but had not received them. Based on the records it did receive, GEICO determined that the underlying settlement, which included $25,000 from the at-fault driver's policy limits and $35,000 from Richardson's PIP limits, fully compensated Richardson, and it denied her UIM coverage.

On August 19, 2013, Richardson filed a complaint against GEICO alleging, among other claims, bad faith relating to GEICO's handling of the PIP and UIM claims. She alleged that GEICO breached its duty to deal in good faith when it arbitrarily and wrongfully denied her claim for PIP and UIM benefits.

In April 2014, GEICO completed its responses to Richardson's first set of interrogatories and requests for productions. It made several objections claiming both attorney-client privilege and attorney work product. Richardson filed a motion to compel and argued that GEICO waived

the attorney-client privilege. She further argued that her claims file was discoverable. GEICO moved for a protective order.

On July 16, the trial court entered an order after an in camera review of the documents GEICO submitted on Richardson's PIP and UIM claims. It ordered the disclosure of all documents[2] submitted for its review, subject to a protective order. The trial court relied on *Cedell v. Farmers Ins. Co. of Washington*, 176 Wn.2d 686, 295 P.3d 239 (2013).

GEICO moved for reconsideration and clarification. The trial court denied the motion. While it found that GEICO's attorney was not engaged in claims adjustment work, "[t]he insured can pierce the attorney-client privilege through an exception such as civil fraud," which Richardson asserted in her motion to compel. Clerk's Papers (CP) at 107. The court determined that the privilege was waived as to both the PIP and UIM claims because Richardson demonstrated that "a reasonable person would have a reasonable belief that an act of bad faith has occurred and after *in camera* review." CP at 107. Accordingly, GEICO produced the claims files in their entirety.

In April 2015, Richardson deposed an employee designated by GEICO to testify on its behalf. During the deposition, GEICO's lawyer directed the employee to not answer questions related to any post-litigation conduct. The parties later conferred on the issue but could not resolve the dispute.

---

[2] The trial court did allow for redactions of some documents.

In November, Richardson filed a motion to compel answers to her deposition questions. She also issued a subpoena to depose Dear. GEICO moved to quash Dear's subpoena, preclude her deposition, and protect her litigation file[3] from discovery. It also moved for a protective order.

The trial court ordered GEICO to produce a copy of Dear's litigation file for in camera review and requested supplemental briefing regarding Dear's litigation file. It ordered GEICO to provide the court with a list of documents from Dear's file that were generated after August 19, 2013, and had not previously been submitted for in camera review.

On February 9, 2016, after Richardson filed another motion to compel and GEICO responded with another motion for a protective order, the trial court ordered GEICO to provide Richardson with all documents from Dear's litigation file that the court had most recently reviewed in camera. It stated that it "will not disturb . . . prior rulings regarding the issue of waiver of attorney-client privilege." CP at 611. The court denied GEICO's subsequent motion for reconsideration.

On February 25, after Richardson filed a renewed motion to compel discovery, the trial court entered an order. It stated that no cases in Washington addressed whether a bad faith claim could be based on an insurance company's post-litigation conduct. The trial court concluded that, under certain circumstances, the majority of the states that have decided the issue permit evidence of post-litigation conduct to be used at trial.

The trial court determined that the weight of Washington authority would "tend toward the conclusion that an insurance company has an ongoing duty of good faith and fair dealing to its policy holders, even after a lawsuit has been commenced." CP at 957. It limited its determination

---

[3] The parties use the term "litigation file" to mean documents, communications, and other information generated by GEICO's attorney after Richardson filed this lawsuit. We use the same term for this purpose.

4

to "an ongoing duty to act fairly in evaluating and resolving claims with their insured." CP at 957.

It did not give Richardson the "authority to carte blanche invade [GEICO]'s work-product and/or

attorney-client privilege." CP at 957.

The court's discovery order stated:

> **ORDERED** that [Richardson] may pursue discovery involving activities occurring after August 19, 2013 to present. [Richardson's] access to this discovery is limited as follows:
>
> 1. The responsive discovery must involve one or more employees of GEICO. There is no discovery authorized which *solely* involves the activities of Defense Counsel.
> 2. The responsive discovery must relate to one or more of the following:
>  a. An evaluation and/or investigation of [Richardson's] claim to the extent new information is being considered.
>  b. Consideration of a strategy to prolong litigation or increase costs of litigation to Plaintiff.
>  c. The refusal to settle the case.

CP at 957 (footnote omitted). The court clarified:

> This limitation is only as to discovery which might be otherwise considered "privileged." The Court has previously ruled that post August 19, 2013 activities are not per se privileged. Anything not covered by work-product and/or attorney client privilege should be disclosed in accordance with the rules of discovery.

CP at 957 n.3.

We granted discretionary review of the February 25, 2016 order.[4]

---

[4] Richardson filed additional authorities on April 28, 2017, and GEICO moved to strike the additional authorities. We denied the motion to strike.

ANALYSIS[5]

GEICO argues that post-litigation documents or information are protected by the attorney-client privilege and the work product doctrine. It also argues that *Cedell*, 176 Wn.2d 686, relied on by the trial court, does not apply. Br. of Appellant at 7-10. We conclude that the trial court misapplied the law and therefore erred in issuing its discovery order.

I. STANDARD OF REVIEW

We review a trial court's discovery order for abuse of discretion. *T.S. v. Boy Scouts of Am.*, 157 Wn.2d 416, 423, 138 P.3d 1053 (2006). A trial court's discovery rulings are reversed only when "a 'clear showing' that the court's exercise of discretion was 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *T.S.*, 157 Wn.2d at 423 (quoting *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)). When a trial court's decision rests on a question of law, we review the decision de novo. *Bishop v. Miche*, 137 Wn.2d 518, 523, 973 P.2d 465 (1999).

When a trial court relies on unsupported facts or applies the wrong legal standard, its decision is exercised on untenable grounds. *Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677, 684, 132 P.3d 115 (2006). If the trial court applies the correct legal standard to the supported facts, but adopts a view no reasonable person would take, its decision is manifestly unreasonable. *Mayer*, 156 Wn.2d at 684. Thus, if the trial court rested its decision on an improper understanding of the law, it has abused its discretion and we may remand. *Dreiling v. Jain*, 151 Wn.2d 900, 907, 93 P.3d 861 (2004).

---

[5] At oral argument, GEICO agreed that it is not seeking review of the discovery of the claims file, the PIP claim, or any post-litigation materials that were inadvertently submitted for in camera review by the trial court.

II.    ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT

"The attorney-client privilege applies to communications and advice between an attorney and client and extends to documents which contain a privileged communication." *Pappas v. Holloway*, 114 Wn.2d 198, 203, 787 P.2d 30 (1990); RCW 5.60.060(2)(a). The purpose of the attorney-client privilege is to protect information from public disclosure so that clients will not hesitate to speak freely and fully inform their attorneys of all relevant facts. *Stephens v. Gillispie*, 126 Wn. App. 375, 382, 108 P.3d 1230 (2005). Sometimes the privilege results in the exclusion of evidence that is otherwise relevant and material. *Pappas*, 114 Wn.2d at 203. The privilege is not absolute; rather, it must be strictly limited to the purpose for which it exists. *Dike v. Dike*, 75 Wn.2d 1, 11, 448 P.2d 490 (1968).

In contrast, "[t]he work product doctrine grants an immunity from discovery to an attorney's work product, permitting attorneys to work with a certain degree of privacy and plan strategy without undue interference." *Coburn v. Seda*, 101 Wn.2d 270, 274, 677 P.2d 173 (1984). The work product doctrine applies to "documents and tangible things" prepared in anticipation of litigation. CR 26(b)(4).[6] If the documents are prepared in anticipation of litigation, the party seeking discovery of the documents must show substantial need. *Heidebrink v. Moriwaki*, 104 Wn.2d 392, 396, 706 P.2d 212 (1985).

"The purpose of discovery is to allow production of all relevant facts and thereby narrow the issues and to promote efficient and early resolution of claims." *Cedell*, 176 Wn.2d at 698. One of the fundamental principles of discovery is that a party may obtain discovery of any relevant matter that is not privileged. *John Doe v. Puget Sound Blood Ctr.*, 117 Wn.2d 772, 777, 819 P.2d 370 (1991); CR 26(b)(1). Because discovery is intended to be broad, a party wishing to assert a

---

[6] *See* ER 502; FRE 502.

privilege may not simply keep quiet about the information it believes is protected from discovery. *Magaña v. Hyundai Motor Am.*, 167 Wn.2d 570, 584, 220 P.3d 191 (2009). It must either reveal the information, disclose that it has it and assert a privilege, or seek a protective order. *Magaña*, 167 Wn.2d at 584.

A first party bad faith claim arises from the fact that the insurer has a quasi-fiduciary duty to act in good faith toward its insured. *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 165 Wn.2d 122, 129-30, 196 P.3d 664 (2008). To prevail in a bad faith claim, the insured must show the insurer's breach of the insurance contract was unreasonable, frivolous, or unfounded. *Am. Best Food, Inc. v. Alea London, Ltd*., 168 Wn.2d 398, 412, 229 P.3d 693 (2010). The test focuses not on whether the insurer correctly interpreted the policy, but on whether the insurer acted reasonably. *Wright v. Safeco Ins. Co. of Am.*, 124 Wn. App. 263, 279, 109 P.3d 1 (2004).

The principles of discovery and attorney-client privilege are in tension in insurance bad faith claims. *Cedell*, 176 Wn.2d at 698. To accommodate the special considerations such claims entail, the insured generally is entitled to access the insured's claims file because work product and attorney-client privilege cannot be invoked to the insurer's benefit "'where the only issue in the case is whether the company breached its duty of good faith in processing the insured's claim.'" *Cedell*, 176 Wn.2d at 697 (quoting *Silva v. Fire Ins. Exch.*, 112 F.R.D. 699, 700 (D. Mont. 1986)). As explained below, the same reasoning does not apply to UIM claims.

III.     *CEDELL*: DISCOVERY OF PRIVILEGED DOCUMENTS IN UIM BAD FAITH CLAIMS

Because the parties and the trial court relied heavily on *Cedell*, we discuss it separately. *Cedell* involved a first-party bad faith homeowner's insurance claim. 176 Wn.2d at 690. The insured filed a bad faith claim against the insurer when the insurer delayed its coverage

determination for a house fire. *Cedell*, 176 Wn.2d at 692. The insured sought production of the claims file and the insurer asserted the attorney-client privilege. 176 Wn.2d at 692.

*Cedell* held that in first-party insurance claims where the insured claimed bad faith in the handling and processing of claims, a presumption existed that the attorney-client privilege did not apply. 176 Wn.2d at 700. The presumption could be overcome "upon a showing in camera that the attorney was providing counsel to the insurer and not engaged in a quasi-fiduciary function," i.e. investigating, evaluating, or processing the claim. *Cedell*, 176 Wn.2d at 700. Even if the attorney acted in a quasi-fiduciary role, an insured could pierce the privilege by showing, among other ways, that a fraud exception applies. *Cedell*, 176 Wn.2d at 700.

But in the UIM context, "there is no presumption of waiver by the insurer of the attorney-client privilege." *Cedell*, 176 Wn.2d at 700. UIM bad faith claims are treated differently from other insurance bad faith claims:

> We have good reason to treat first-party bad faith claims involving the processing of UIM claims differently, however. UIM carriers stand in the shoes of the underinsured motorist/tortfeasor to the extent of the carrier's policy limits . . . Consequently, the UIM carrier is entitled to pursue all the defenses against the UIM claimant that could have been asserted by the tortfeasor. . . . Because the provision of UIM coverage is by nature adversarial, an inevitable conflict exists between the UIM carrier and the UIM insured. . . . The friction between this adversarial relationship and the traditional fiduciary relationship of an insured and an insurer is difficult to resolve.

*Barry v. USAA*, 98 Wn. App. 199, 204-05, 989 P.2d 1172 (1999) (citations omitted).

*Cedell* recognized that the UIM insurer "may defend as the tortfeasor would defend" and "is entitled to counsel's advice in strategizing the same defenses that the tortfeasor could have asserted." 176 Wn.2d at 697. Because there is no presumption the insurer waives the attorney-client privilege in a UIM case, the insured must overcome a higher bar in order to discover privileged pre-litigation information. *Cedell*, 176 Wn.2d at 700.

In the UIM context, one way to pierce the attorney-client privilege is for the insured to assert, as Richardson did, civil fraud. *Cedell*, 176 Wn.2d at 697-98. If the fraud exception is asserted, the trial court engages in a two-step process to determine if piercing the attorney-client privilege is appropriate. *Cedell*, 176 Wn.2d at 698.[7]

"First, the court determines whether there is a factual showing adequate to support a good faith belief by a reasonable person that wrongful conduct sufficient to evoke the fraud exception has occurred. Second, if so, the court subjects the documents to an in camera inspection to determine whether there is a foundation in fact for the charge of civil fraud." *Cedell*, 176 Wn.2d at 698 (quoting *Barry*, 98 Wn. App. at 206). If an insurer engages in bad faith in an attempt to defeat a meritorious claim, bad faith is tantamount to civil fraud.[8] *Cedell*, 176 Wn.2d at 700.

The present case is distinguishable from *Cedell*. Here, the issue is whether or not GEICO has to give up its litigation file, which it generated after Richardson filed suit. *Cedell* applied to the insured's claims file, pre-litigation documents and information. It applied to discovery involving why the insurer denied coverage at the time it made such a determination.

In this case, per *Cedell*, GEICO produced Richardson's claims file concerning both her PIP and UIM claims. *Cedell* does not suggest that privileged or work product information generated post-litigation is also subject to discovery.

V.    THE LAW DOES NOT SUPPORT THE DISCOVERY ORDER

As previously discussed, the attorney-client privilege protects communications and advice between a client, in this case, GEICO, and its attorney. *Pappas*, 114 Wn.2d at 203. The privilege

---

[7] The trial court followed this two-step process, but did not make an express finding of civil fraud.

[8] We note that, "Since conduct short of fraud constitutes bad faith, requiring a threshold showing of fraud to reach critical evidence requires too much." *Cedell*, 176 Wn.2d at 697-98 n.4.

allows clients to speak freely and fully inform their attorneys of all relevant facts. *Stephens*, 126 Wn. App. at 382. Similarly, the work product doctrine allows attorneys to have complete privacy to assess the strengths and weaknesses of a case, including defenses, counterclaims and cross claims, to plan litigation strategy and share impressions, and to meet with and interview witnesses without undue interference. *See Coburn*, 101 Wn.2d at 274.

In this case, Richardson settled with the tortfeasor. Thereafter, in 2011, she filed a UIM claim with GEICO. Approximately one year later, GEICO informed Richardson that it was waiting on additional medical records to complete its evaluation. Based on the medical records it received, GEICO determined that Richardson had been fully compensated. Approximately one year after GEICO's decision, Richardson filed her lawsuit.

The record is clear that GEICO made a decision regarding the UIM claim before Richardson filed suit. That decision forms the basis of Richardson's bad faith allegation. Her complaint alleged that "GEICO's arbitrary and wrongful conduct, including, but not limited to, denial of Plaintiff's claim for PIP and UIM benefits" was a breach of its duty to deal in good faith. CP at 12. All information relating to this claim would, therefore, be available in her claims file which GEICO provided.

Allowing Richardson to access privileged information between GEICO and its attorney as to events that occurred after GEICO made its decision regarding the UIM claim and made after Richardson filed suit would run afoul of the purpose of the attorney-client privilege, the work product doctrine, and the purposes of discovery. Attorney work product that occurs after the filing of a lawsuit often contains the lawyer's assessment of the case, trial strategy, and impressions of witnesses. Here, the litigation file is irrelevant to Richardson's UIM claim. Richardson has not shown anything to the contrary.

In deciding this case, we note that the parties cited to and relied on cases outside this jurisdiction. *See T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520 (11th Cir. 1985); *White v. W. Title Ins. Co.*, 40 Cal.3d 870, 710 P.2d 309 (1985); *Gregory v. Cont'l Ins. Co.*, 575 So.2d 534 (Miss. 1990); *Palmer by Diacon v. Farmers Ins. Exch.*, 261 Mont. 91, 861 P.2d 895 (Mont. 1993); *O'Donnell ex rel. Mitro v. Allstate Ins. Co.*, 734 A.2d 901 (Pa. Super. Ct. 1999); *Babai v. Allstate Ins. Co.*, 2015 WL 1880441 (W.D. Wash. Apr. 24, 2015).[9] However, only *Palmer* involved a UIM bad faith claim.

In *Palmer*, the court held that the continuing duty of good faith "does not necessarily render evidence of an insurer's post-filing conduct admissible." 861 P.2d at 914. It noted that public policy favors the exclusion of such evidence because "the introduction of such evidence hinders the right to defend and impairs access to the courts." *Palmer*, 861 P.2d at 914. It further stated that an insurer's litigation tactics and strategy in defending a claim are not relevant to the insurer's decision to deny coverage, stating, "if the insured must rely on evidence of the insurer's post-filing conduct to prove bad faith in denial of coverage, questions arise as to the validity of the insured's initial claim of bad faith." *Palmer*, 861 P.2d at 915. *Palmer*, thus, seems to support the proposition that the litigation file in a UIM bad faith claim is not discoverable.

Richardson cites to several other out-of-state cases, arguing that they support the proposition that post-litigation conduct is not only discoverable, but also relevant and admissible. However, none is persuasive. *See Parsons ex rel. Parsons v. Allstate Ins. Co.*, 165 P.3d 809, 818–19 (Colo. App. 2006) (court warned against admitting attorney litigation conduct as evidence of an insurer's bad faith because insurers would be deterred from conducting a vigorous defense if

---

[9] *Babai* was cited for the separate proposition that Washington authority tends towards the conclusion that an insurer has an ongoing duty of good faith and fair dealing to its policy holders, even after a lawsuit has been commenced.

their pleadings could be used as evidence of pre-existing bad faith); *Knotts v. Zurich Ins. Co.*, 197 S.W.3d 512, 522 (Ky. 2006) (court held introduction of evidence of litigation conduct would have chilling effect on an insurer's litigation rights and remedies provided by civil procedure rules); *Federated Mut. Ins. Co. v. Anderson*, 297 Mont. 33, 991 P.2d 915, 922 (Mont. 1999) (court noting previous holdings that continuing duty of good faith does not necessarily render evidence of an insurer's post-filing conduct admissible; public policy favors the exclusion of such evidence and courts must use extreme caution in admitting such evidence because it hinders the right to defend and impair access to the courts).

Richardson also relies on *Gooch v. State Farm Mutual Auto. Ins. Co.*, 712 N.E.2d 38 (Ind. App. 1999). She argues that per *Gooch*, an insurer's litigation conduct is admissible in determining whether it made a bad faith attempt to force an insured to settle a UIM claim. In *Gooch*, the litigation conduct at issue occurred after the insured filed her lawsuit on her UIM claim, but before she filed her bad faith claim. 712 N.E.2d at 42. Here, the litigation conduct occurred after Richardson filed her bad faith claim. Further, in *Gooch*, the court admitted the evidence at trial because it determined that the insured's complaint did not go to the heart of the litigation process. 712 N.E.2d at 43. The court also recognized the validity of the insurer's policy arguments, and that other existing remedies existed for misconduct of an insurer's attorney. *Gooch*, 712 N.E.2d at 43. The case is, therefore, unpersuasive.

Richardson additionally relies on *Tucson Airport Authority v. Certain Underwriters at Lloyd's, London*, 186 Ariz. 45, 918 P.2d 1063, 1064 (Ariz. App. 1996), and *O'Donnell ex rel. Mitro*, 734 A.2d at 907, arguing that other states support the proposition that post-litigation conduct is discoverable and admissible. She argues that *Tucson Airport* holds that wrongful litigation conduct of an insurance company toward an insured during a coverage lawsuit was not

13

inadmissible due to "litigation privilege." Br. of Resp't at 21. However, that case did not involve UIM benefits and concerned whether the insured alleged facts sufficient to support a third-party bad faith claim. *Tucson Airport*, 918 P.2d at 1065.

In *O'Donnell*, the court held that the conduct of an insurer during the pendency of litigation may be considered as evidence of bad faith because the language of the applicable statute did not limit bad faith actions to only pre-litigation conduct. 734 A.2d at 907. However, the case did not involve a UIM claim and the applicable Washington insurance statutes are not as broad as the one in *O'Donnell*. *Compare* 42 Pa. Cons. Stat. Ann. § 8371(1)-(3), as quoted in *O'Donnell*, 734 A.2d at 905, *with* RCW 48.01.030 *and* chapter 48.20 RCW. Neither *Tuscon Airport* nor *O'Donnell* is binding or instructive on the issue before us.

Further, the proposition that an insurer's privileged post-litigation materials are discoverable in a UIM context is contrary to public policy. We agree with the federal courts which have held that evidence of an insurer's litigation conduct is rarely admissible because it lacks probative value and has a high risk of prejudice:

> Allowing litigation conduct to serve as evidence of bad faith would undermine an insurer's right to contest questionable claims and to defend itself against such claims. . . . [P]ermitting allegations of litigation misconduct would have a "chilling effect on insurers, which could unfairly penalize them by inhibiting their attorneys from zealously and effectively representing their clients within the bounds permitted by law." Insurers' counsel would be placed in an untenable position if legitimate litigation conduct could be used as evidence of bad faith.

*Timberlake Const. Co. v. United State Fid. & Guar. Co.*, 71 F.3d 335, 341 (10th Cir. 1995) (internal citations omitted) (quoting *Int'l Surplus Lines Ins. Co. v. Univ. of Wyoming Research Corp.*, 850 F. Supp. 1509, 1529 (D. Wyo. 1994), *aff'd sub nom*, 52 F.3d 901 (10th Cir. 1995)).

Other remedies are available to a plaintiff asserting such a claim under the rules of civil procedure. *Int'l Surplus*, 850 F. Supp. at 1528. Examples of redress for improper litigation

14

conduct include "motions to strike, compel discovery, secure protective orders, or impose sanctions." *Timberlake*, 71 F.3d at 341.

We agree with the public policy concerns discussed above, particularly in light of the adversarial relationship between insurers and insureds in UIM bad faith actions. Further, the law on attorney-client privilege and work product doctrine provides that, in this context, information generated post-litigation is not discoverable. Allowing such information to be discoverable is not only contrary to the purposes of attorney-client privilege, but it would have a chilling effect on an insurer's ability to defend itself against claim disputes. It also has little bearing on a bad faith action concerning a UIM claim that was denied months before the lawsuit commenced.

Richardson cites to an unreported federal district court order that rejected the defendant's argument "that litigation is automatically anticipated for work-product purposes when a suit is 'commenced.'" *HSS Enterprises, LCC v. AMCO Ins. Co.*, No. C06-1485-JPD, 2008 WL 163669, at *5 (W.D. Wash. Jan. 14, 2008). It noted that if the court were to sustain the defendant's position, "[i]nsurers could insulate all claims investigation materials produced after the filing date by merely inserting an arbitrary suit limitation clause into its policy." *HSS Enterprises*, 2008 WL 163669, at *5.

However, *HSS Enterprises* is distinguishable because at issue was whether the work product doctrine even applied to the documents at issue. The court held that whether the documents were protected would be determined on a case-by-case basis; when the documents at issue were prepared is not necessarily critical in determining whether the documents were prepared in anticipation of litigation. *HSS Enterprises*, 2008 WL 163669, at *5.

In this case, the trial court's order limited post-litigation discovery, noting that it was not giving Richardson authority to "carte blanche" invade GEICO's work product or attorney-client

15

privilege. CP at 957. However, the trial court's reliance on *Cedell* and the distinguishable out-of-state cases to support the proposition that Richardson can pierce the attorney-client privilege as to post-litigation documents and information in her UIM bad faith action was misplaced.

As discussed above, *Cedell*'s holding is limited to pre-litigation documents, i.e. the insured's claims file. GEICO produced Richardson's claims file as to both the PIP and UIM claims. *Cedell* does not support the trial court's order that privileged post-litigation materials, work product, and information in UIM bad faith actions are discoverable. The out-of-state cases cited by the parties are distinguishable and unpersuasive.

We conclude that the discovery order was unsupported by and contrary to existing law. To the extent that the order compels GEICO to produce post-litigation documents or information protected by the attorney-client privilege or work product doctrine as to Richardson's UIM bad faith claim, we conclude that the trial court abused its discretion.

VI.     ATTORNEY FEES

Richardson requests attorney fees pursuant to CR 37, RAP 14.2, and RAP 18.1 because this appeal is "simply a continuation of GEICO's failure to recognize and act on its discovery obligations." Br. of Resp't at 28. Because we reverse the trial court's order and remand, we deny Richardson's request for fees.

GEICO also requests attorney fees, arguing that Richardson attempted to re-litigate the issue and her actions are "wholly inappropriate." Br. in Reply at 25. GEICO does not expand on its assertions and only states that "[u]pon receiving an award from this Court, [it] will submit an affidavit pursuant to RAP 18.1(d)." Br. in Reply at 25.

A request for appellate attorney fees requires a party to include a separate section in her or his brief devoted to the request. RAP 18.1(b). "Argument and citation to authority are required

16

under the rule to advise the court of the appropriate grounds for an award of attorney fees as costs."

*Stiles v. Kearney*, 168 Wn. App. 250, 267, 277 P.3d 9 (2012). Because GEICO's request for fees is unsupported by argument or citations to authority, we deny GEICO's request.

We reverse and remand.

Melnick, J.

We concur:

Johanson, P.J.

Sutton, J.