IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CATHERINE MICHELE NAGY, an individual, | ) ) ) | No. 78637-7-I |
| Appellant, | ) ) ) | DIVISION ONE |
| v. | ) ) ) | UNPUBLISHED OPINION |
| EMPRES HOME HEALTH OF BELLINGHAM, LLC, a Washington limited liability company, d/b/a EDEN HOME HEALTH, and GEORGE MILLER in his capacity as its employee; and/or EMPRES HOME CARE OF BELLINGHAM, LLC, a Washington limited liability company, d/b/a EDEN HOME HEALTH, and GEORGE MILLER in his capacity as its employee; and/or EMPRES HEALTH CARE MANAGEMENT, LLC, a Washington limited liability company, d/b/a EDEN HOME HEALTH, and GEORGE MILLER in his capacity as its employee; and/or EMPRES WASHINGTON HEALTH CARE, LLC, a Washington limited liability company, d/b/a EDEN HOME HEALTH, and GEORGE MILLER in his capacity as its employee; and/or EMPRES FINANCIAL SERVICES, LLC, a Washington limited liability company, d/b/a EDEN HOME HEALTH, and GEORGE MILLER in his capacity as its employee; and/or EMPRES HEALTHCARE GROUP, LLC, a Washington limited liability company, d/b/a EDEN HOME HEALTH, and GEORGE MILLER in his capacity as its employee. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Respondents. | ) ) ) | FILED: December 2, 2019 |

No. 78637-7-I/2

HAZELRIGG-HERNANDEZ, J. — Catherine Nagy appeals the trial court's order on summary judgment dismissing her claims against Empres Home Health of Bellingham and related Empres businesses (Eden).[1] Nagy previously settled her personal injury claim against the Eden employee who injured her and signed a release of all bodily injury claims discharging and releasing the primarily responsible employee, but also any other liable person, principal, corporation or business entity. The trial court granted Eden's motion for summary judgment on the basis that Nagy had not preserved any claims against Eden. Nagy contends there are genuine issues of material fact in her claims of vicarious liability against Eden. We affirm the order dismissing Nagy's claims.

FACTS

Nagy was walking in a marked crosswalk with a lit "walk" signal when she was struck and injured by a car driven by George Miller, an Eden employee. Medics at the scene noted Nagy's head was lacerated and her knee was injured. She claimed that her medical expenses exceed $60,000, as of May, 2018.

Nagy retained counsel and on October 27, 2017, she settled her claim against Miller for $50,000, which was the policy limit of Miller's insurance. Nagy and her attorney both signed the release agreement sent by Miller's insurance company. Nagy states that she did not intend to release Miller's employer. However, neither she nor her counsel added any terms to reserve her rights

---

[1] Because the parties refer to Empres Home Health of Bellingham, LLC and its related business entities as Eden Home Health or simply Eden, we use the same term.

against Eden or any other principal of Miller's, or any corporation or business entity from the scope of the settlement.

On November 17, 2017, Nagy sued Eden, alleging that Eden employed Miller and he was working within the scope of his employment at the time he struck Nagy. Eden moved for summary judgment dismissing Nagy's claims on May 2, 2018. Nagy responded and the court granted Eden's motion after oral argument. In the order granting summary judgment, the court indicated, as required by RAP 9.12, that it relied on the motion, response, reply, and the declarations and exhibits filed by the parties. The court did not enter findings of fact or conclusions of law. Judgment was entered on June 15, 2018. Nagy timely appealed. Eden moved to strike Nagy's reply brief, arguing that it raised new arguments not presented in the trial court and as exceeding the scope of its response brief.

## DISCUSSION

I.     Motion to Strike Nagy's Reply Brief

Eden's motion to strike the reply brief filed by Nagy is a threshold matter in this case. We consider whether the reply brief violates RAP 10.3(c) and 2.5. Under RAP 10.3(c) a reply brief is limited to a response to the issues in the brief to which the reply brief is directed. Washington courts have repeatedly held that an issue raised and argued for the first time in a reply brief is too late to warrant consideration. See, e.g., Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). Addressing issues argued for the first time in a reply brief is unfair to Eden and inconsistent with the rules on appeal. Ainsworth v. Progressive Cas. Ins. Co., 180 Wn. App. 52, 78 n.20, 322 P.3d 6 (2014).

In general, issues not raised in the trial court may not be raised on appeal. RAP 2.5(a); Roberson v. Perez, 156 Wn.2d 33, 39, 123 P.3d 844 (2005). During the proceedings in the trial court, Nagy made three arguments in response to Eden's motion for summary judgment: (1) the release does not cover Eden because, under Glover v. Tacoma General Hospital, the principal is not released from liability unless the agent was solvent and the settlement with the agent is was reasonable, (2) the release does not specifically identify Eden by name, and (3) it would be inequitable to release Eden from liability. 98 Wn.2d 708, 720-23, 658 P.2d 1230 (1983) (abrogated on other grounds by Crown Controls, Inc. v. Smiley, 110 Wn.2d 695, 756 P.2d 717 (1998). On appeal, Nagy has made the same three arguments in her opening brief and Eden's response brief presents the same argument it did in the trial court.

However, in her reply brief, Nagy argues for the first time that the language of the release, standing alone, does not dispose of the issue of whether Eden was released. Nagy asks this court to apply the context rule of Berg v. Hudesman, and look to extrinsic evidence to determine the parties' intent. 115 Wn.2d 657, 801 P.2d 222 (1990). Nagy claims there is a genuine issue of material fact concerning what the parties intended and that the interpretation of a contract is a matter of law when only one reasonable inference may be drawn from the extrinsic evidence.

Nagy's reply argument relies heavily on two cases, neither of which she cited in the trial court briefing or in her opening brief; Stephens v. Gillespie and Terence Butler v. Randal T. Thomsen, an unpublished decision. Stephens v. Gillespie, 126 Wn. App. 375, 108 P.3d 1230 (2005); Terence Butler v. Randal T.

4

Thomsen, No. 76536-1-I, slip op. (Wash. Ct. App. Dec. 31, 2018) (unpublished), www.courts.wa.gov/opinions/pdf/765361/pdf. None of the analysis or argument based on these cases was included in Nagy's briefing in the trial court or in her opening brief in this court. There was no discussion in the trial court of whether or how Berg's context rule might apply here. Nagy argues that Eden is not prejudiced by her new argument, because Eden cited to the Berg decision in its own brief. But Eden cited the Berg case solely for the well-established proposition that the role of the court is to determine "the meaning of what is written, and not what was intended to be written." Berg, 115 Wn.2d at 669 (quoting J.W. Seavey Hop Corp. of Portland, Or. v. Pollock, 20 Wn.2d 337, 349, 147 P.2d 310 (1944)). Eden did not cite Berg to inject the issue of context into the case, and its reference to Berg did not open the door for Nagy to raise entirely new arguments in support of reversing the trial court.

Nagy also asserts that she raised the context rule in the trial court and here because she repeatedly made references to her own intent in her briefing. This is simply insufficient to put Eden on notice that Nagy was arguing that the court needed to consider extrinsic evidence of the context in which she signed the release to determine what the release means. Moreover, as Eden notes, evidence of Nagy's unilateral or subjective intent about the meaning of the release is not admissible for purposes of the context rule. Hollis v. Garwall, 137 Wn.2d 683, 698, 974 P.2d 836 (1999). Eden's motion to strike Nagy's reply brief is granted under RAP 2.5(a) and 10.3(c).

II.    Dismissal Based on the Release of All Claims

On appeal from an order granting summary judgment, the standard of review is de novo, and the appellate court performs the same inquiry as the trial court. Lybbert v. Grant County, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000). Summary judgment is appropriate when the pleadings, affidavits, and depositions establish that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Id.; CR 56(c). A "material fact" is one on which the outcome of the litigation depends in whole or in part. Boguch v. Landover Corp., 153 Wn. App. 595, 608, 224 P.3d 795 (2009).

In determining whether a genuine issue of material fact exists, we view all facts and reasonable inferences in the light most favorable to the nonmoving party. Modumetal, Inc., v. Xtalic Corp., 4 Wn. App. 2d 810, 822, 425 P.3d 871 (2018). To be sufficient to defeat summary judgment, a party's affidavit must present more than ultimate facts, conclusory allegations, speculative statements, opinions, or argumentative assertions. Grimwood v. Univ. of Puget Sound, Inc., 110 Wn.2d 355, 359-60, 753 P.2d 517 (1988) (abrogated on other grounds by Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas Cty., 189 Wn.2d 516, 404 P.3d 464 (2017)).

A.    The Release is a Contract

A release is a contract and its construction is governed by contract principles subject to judicial interpretation in light of the language used. Nationwide Mut. Fire Ins. Co. v. Watson, 120 Wn.2d 178, 187, 840 P.2d 851 (1992) (citing Vanderpool v. Grange Ins. Ass'n, 110 Wn.2d 483, 488, 756 P.2d 111 (1988)). The purpose of contract interpretation is to ascertain the intent of the parties. Dwelley

v. Chesterfield, 88 Wn.2d 331, 335, 560 P.2d 353 (1977). We ascertain the parties' intent by focusing on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties. Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 503, 115 P.3d 262 (2005). Clear and unambiguous contracts are enforced as written. Grey v. Leach, 158 Wn. App. 837, 850, 244 P.3d 970 (2010) (citing McDonald v. State Farm Fire & Cas. Co., 119 Wn.2d 724, 733–34, 837 P.2d 1000 (1992)). Words used in a contract are given their ordinary, usual, and popular meaning unless the agreement clearly demonstrates a contrary intent. Hearst, 154 Wn.2d at 504.

A contract provision is ambiguous when its terms are uncertain or may be understood as having more than one meaning. Shafer v. Bd. of Tr. of Sandy Hook Yacht Club Estates, Inc., 76 Wn. App. 267, 275, 883 P.2d 1387 (1994), review denied, 127 Wn.2d 1003, 898 P.2d 308 (1995). We will not read ambiguity into a contract where we can reasonably avoid it. Grey, 158 Wn. App. at 850 (citing McGary v. Westlake Investors, 99 Wn.2d 280, 285, 661 P.2d 971 (1983)).

The release of claims Nagy and her attorney signed in this case provides, in relevant part:

> In signing the following Release of All Claims for Bodily Injury Only, you are giving up all your rights and claims for bodily injury and damages resulting from the accident or incident referred to in the Release, which you may not even know or suspect to exist and which if known by you would have materially affected your settlement.
> . . .
> The Releasor does hereby acknowledge receipt of payment in the amount of: Fifty Thousand dollars and 00 cents ($50,000:00) made payable to: Catherine Nagy & Michael K Tasker, attorney [sic], which payment is accepted in full compromise, settlement, and satisfaction of, and as sole consideration for the final release and discharge of all bodily injury or personal injury actions, claims, damages,

demands, causes of action, or suits of every kind and nature whatsoever, at law or in equity, known or unknown, suspected or unsuspected, disclosed and undisclosed, that now exist, or may hereafter accrue against Sherri Miller, Nicole Miller, George Miller (hereinafter "the Releasee") and any other person, insurer, principals, agents, employees, assigns, representatives, subsidiaries, corporation, or other business entity responsible in any manner or degree for injuries to the person of the Releasor, and the treatment thereof, and the consequences flowing therefrom, as a result of the accident or incident which occurred on or about 11/17/2014, at or near East Chestnut St @ Railroad Ave, Bellingham, WA , and for which the Releasor claims the Releasee and the above mentioned persons or entities are legally liable in damages which legal liability and damages are disputed and denied.

. . .

I do declare that I understand that this release is a final release for all bodily injury claims I may be entitled to because of the accident or incident described above.

The terms of this full and final release of claims are not ambiguous or unclear, nor are they subject to multiple reasonable interpretations. The sole reasonable interpretation is that the release discharges the liability of Miller's principals for any of Nagy's injuries resulting from the accident on November 17, 2014. The Eden business entities are Miller's principals. Moreover, Nagy does not claim or present any evidence to suggest that she did not know that Eden employed Miller at the time of the accident.

Nagy argues that Eden cannot rely on the release because it does not identify Eden by name as a released entity. We reject this argument. In Perkins v. Children's Orthopedic Hosp., 72 Wn. App. 149, 864 P.2d 398 (1993), an infant was severely and permanently injured during a surgical procedure at Children's Hospital. The defendants in the case included the State, University Hospital (now University of Washington Medical Center), the lead surgeon, two University-related physician's groups, and Children's. Id. at 152. Four other doctors involved in

8

treating the child were not named in the suit. The plaintiffs reached a settlement with all parties other than Children's, and executed a release discharging the settling parties and "any related organizations or entities, and their representatives, agents, and assigns." Id. Children's then moved for partial summary judgment, which the trial court denied. We reversed, holding that a "straightforward literal reading of the document which releases the 'agents' of the University defendants includes all who, like the unnamed doctors, are in fact agents of the University defendants." This, in turn, released any claims against Children's that were based on a theory of vicarious liability for the negligence of the physicians. Id. at 161-62. We emphasized that there was "no merit" to the argument that the word "agents" did not include the unnamed doctors; including agents had the same legal effect as the language that included the lead surgeon by name. Id. at 161, 164.

The same analysis applies here. The release Nagy and her attorney signed included unnamed principals of Miller and the Eden entities are Miller's principals. The release need not identify the Eden business entities by name to effectively discharge them from vicarious liability for Miller's negligence. And here, as in Perkins, the subjective intent of the plaintiffs "cannot control the legal consequences of the executed release." Id. at 162.

B.    Glover's Reasonableness Test Does Not Apply

Nagy further argues that Eden cannot be released from liability unless there is a determination that her settlement with Eden's agent, Miller, was reasonable. Nagy bases this argument on Glover and asserts that the court there adopted the rationale of an earlier case, Ralph C. Finney et al. v. Farmers Insurance Company

9

of Washington et al., Aetna Casualty & Surety Company. 92 Wn.2d 748, 600 P.2d 1272 (1979). However, Nagy misreads both cases and, contrary to her argument, Glover did not adopt the reasoning of Finney. Rather, the Glover court specifically noted its ruling conflicted with Finney. 98 Wn.2d at 723-24. To resolve the conflict, the Court limited Finney's holding to cases where the plaintiff settles with an agent who is financially unable to fully compensate the plaintiff. Id. That limitation brings Finney into line with Glover, where the release of the agent may operate to release the principal, because the settlement was reasonable. Additionally, both of these cases are factually distinct from the present matter: Glover involved a medical malpractice case wherein the proposed settlement expressly excluded a defendant hospital and Finney was a wrongful death action that examined uninsured motorist coverage where the operator of the vehicle had liability coverage, but the registered owner did not.

Factual dissimilarity aside, Nagy further misreads these cases as standing for the proposition that a principal may only be released from liability if the plaintiff's settlement with the agent was "reasonable," as that term is used in RCW 4.22.060. As the statute recognizes, a release may discharge a person who is liable, but it "does not discharge any other persons liable upon the same claim unless it so provides." RCW 4.22.060(2) (emphasis added). Here, the release Nagy and her attorney executed included among the persons released not only Miller, but his principals. This fact further distinguishes Nagy's situation from that of either Glover or Finney. There is simply no support for Nagy's argument that a release that

expressly discharges the liability of a vicariously liable principal can be construed to mean that it does not do so.

C.    Eden's Release from Liability is not Inequitable

Nagy argues that it would be inequitable and contrary to public policy to release Eden. The crux of her argument is that because there is an employer, an entity separate and distinct from Miller, who may be able to ensure Nagy is fully compensated for her injuries, it is unfair to allow that party to be released. Nagy does not cite to a single case holding that a plaintiff may avoid the effect of a release that plainly discharges both the agent and the principal from liability for all of her injury claims on the basis that it is inequitable. This is not a situation involving fraud, overreaching, or misrepresentation. Nagy was represented by counsel who approved and executed the release along with her. Under these circumstances, the language of the contract should be honored.

Eden's motion to strike Nagy's reply brief is granted. We affirm the trial court's order of summary judgment dismissing Nagy's claims.

Affirmed

WE CONCUR: