

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE MAY 2 3 2019

FOR CHIEF JUSTICE

This opinion was
filed for record
at 8am on 5-23-2019

Susan L. Carlson
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| MONICA DIAZ BARRIGA FIGUEROA, as parent and natural guardian of BRAYAN MARTINEZ, a minor, | ) ) ) ) ) | No. 95827-1 |
| Respondent, | ) ) | |
| v. | ) ) | Filed ___MAY 2 3 2019___ |
| CONSUELO PRIETO MARISCAL, individually and the marital property thereof, if any, | ) ) ) ) | |
| Petitioner. | ) ) | |

GONZÁLEZ, J—Washington law extends work product protection to statements made by an insured to an insurer following an accident in light of the specific parties involved and the expectations of those parties. We must decide if that protection applies here, where the insured has gained the status of insured by statute, rather than by contract. We hold it does. We affirm the Court of Appeals and remand to the trial court for a new trial.

FACTS

On October 30, 2013, Consuelo Prieto Mariscal was driving her minivan in Pasco, Washington, with her daughter. There were vehicles, including an orange pickup truck and a van, on the right side of the road. As Prieto passed the orange pickup truck, she heard a noise, felt her van jump a little, and saw a boy, Brayan, lying on the ground. Realizing Brayan was seriously hurt, her daughter called 911. Brayan was taken to a nearby hospital.

A police officer spoke with Prieto and her daughter but not Brayan or his mother, Monica Diaz Barriga Figueroa. Prieto and her daughter both told the officer they did not see how the accident happened. Although there were no other eyewitnesses, and although the officer spoke only with Prieto and her daughter, he wrote in the police report:

> On 10/30/13 at 1456 V1 was traveling S/N 400 block of North Cedar when an 8 YOA age child on a bicycle rode into the roadway and directly in front of V1. There were two parked vehicles on the shou[ld]er of the roadway that created a blind spot for the driver of V1. When the bicyclist pulled into the roadway the rider was struck on the left side and fell to the ground. The passenger side front tire then drove over the child['s] right front leg. The child was [transported to] an area hosp[it]al via ambulance for treatment.

Clerk's Papers at 305. Brayan gave a number of statements about the accident. Brayan's most detailed version of the accident is that his right shoelace got stuck in the spokes of his bike and his right leg was run over when he leaned over to untangle the shoelace.

2

Three weeks after the accident, Diaz went to a local law firm to seek help.

Diaz was asked to sign a blank personal injury protection (PIP) application form,

so she did. Diaz is a monolingual Spanish speaker, and the legal assistant who met

with her is a monolingual English speaker. This presigned PIP form was filled out

later by the legal assistant based on the police report. Section five of the form

asked for a brief description of the accident. Mirroring the police report, the legal

assistant wrote:

> Vehicle was traveling on North Cedar when child on a bike rode into road.
> There were 2 parked cars on the road creating a blind[] spot for the driver.
> Child was struck & had right leg ran over.

Def.'s Ex. 101, at 1. In addition to seeking PIP coverage, Diaz also sued Prieto on

behalf of Brayan. The significant difference between the PIP form and Brayan's

testimony became a central issue at trial. Prieto's counsel stressed the differences

between Diaz's and Brayan's testimony and the PIP form; Diaz's counsel stressed

that the PIP form was based on accounts from people who did not see the

accident.[1]

During opening statements, Prieto's counsel referenced the PIP form over

Diaz's counsel's objection. After opening, out of the presence of the jury, Diaz's

---

[1] Experts for both sides testified the injuries were inconsistent with the injuries that would have been present had he in fact ridden his bike into the road and been struck as he was riding. During trial, Diaz testified she would not have signed the PIP form had she known what the description was going to be because she did not agree with it.

3

counsel addressed Prieto's counsel's use of the PIP form in opening and moved to

exclude any further reference to it:

> Your Honor, in anticipation of today's trial, in defendant's opening he brought up some piece of evidence that I think he might try to bring up again.
>
> One was a Personal Injury Protection application. . . .
>
> It's a first-party application and privilege is not waived when you submit something to first-party insurance. And, in fact, first-party insurance is not supposed to share the PIP file with defense without permission of plaintiff.
>
> In this case, he somehow got a copy of the PIP application. This raises a number of concerns. The PIP application is a no-fault insurance application, meaning that the description of the accident has no bearing on whether or not you get benefits in a PIP application.
>
> . . . .
>
> He wants to use this PIP application as a statement against interest of [Diaz]. . . .
>
> . . . [Because this is a privileged document,] even though he already referenced it in his opening, and I objected to it then, I would move to exclude any further reference to this Personal Injury Protection application.

1 Report of Proceedings (RP) (June 2, 2016) at 119-21. Prieto's counsel

responded:

> First of all, this document is not privileged. . . . This is an application form for Personal Injury Protection benefits for Brayan's treatment.
>
> . . . .
>
> There is no law that the PIP application is not to be shared with defense counsel. Plaintiff has not cited to you any authority. That's important to keep in mind.
>
> The PIP insurance coverage is, in essence, a no fault benefit provided on the insurance policy insuring Ms. Prieto. Okay?

4

So it's her insurance company that's providing this benefit of medical coverage to Brayan. There is no law that certainly the plaintiff has cited that prevents that information to be shared with me or Ms. Prieto's insurance company.

*Id.* at 121-22. The court then took a voir dire examination of Diaz to establish her knowledge of the PIP form and who filled it out.

After voir dire, and after argument by counsel for both sides, the court concluded:

Well, it's sort of odd this particular statement . . . we have a statement signed by a party and yet, so arguably, it's a statement by the party versus the agent speaking on her behalf, which what we have here is this statement on its face doesn't show that it was the agent.

Now, we have testimony that does show that it was an agent who spoke essentially or had the party's authority to write it, because she essentially signed it and handed it over.

So the Court is going to find, first, that it's not a privileged document. That in redacted form, it doesn't violate the motion in limine as to collateral source. I do find it's an admission against interest under the rule as cited.

It will be allowed and that's my ruling.

*Id.* at 134-35. A redacted version of the PIP application was admitted into evidence. *See* Def.'s Ex. 101. Prieto's counsel then used the application to cross-examine Diaz:

Q. And three weeks after [speaking with Brayan about the accident at the hospital], you signed what's been admitted as Exhibit 101, with a description of the accident. Correct?

A. I signed it when it was blank.

Q. Okay. And the description reads, "Vehicle was traveling on North Cedar when child on bike rode into road. There were two parked cars on the

road, creating a blind spot for the driver. Child was struck and had right leg ran over."

Correct?

A. I didn't know — I didn't know about that.

Q. But that's what the description states. Correct?

A. Yes. But I guess they got that from the police report because if I would have known that they were going to write that on it, I would not have signed it because I'm not in agreement with that.

2 RP (June 3, 2016) at 298-99. Prieto's counsel also used the application to cross-examine Diaz's accident reconstructionist, to support Prieto's reconstructionist's expert opinion, and, in closing argument, to question Diaz's credibility. Use of the PIP form was extensive, and the PIP form was the primary exhibit in the case because the police report was excluded as substantive evidence at trial as hearsay.

The jury returned a defense verdict. The Court of Appeals reversed, holding the PIP application was work product and its admission was prejudicial, requiring a new trial. *Barriga Figueroa v. Prieto Mariscal*, 3 Wn. App. 2d 139, 414 P.3d 590 (2018). We granted Prieto's petition for review and denied the issues raised by Diaz. *Barriga Figueroa v. Prieto Mariscal*, 191 Wn.2d 1004, 424 P.3d 1214 (2018). Washington State Association for Justice Foundation filed an amicus brief.

ANALYSIS

I.    Quasi-fiduciary relationship

Since 1993, the State of Washington has required all insurers to offer PIP coverage to all automobile liability policyholders. *See* LAWS OF 1993, ch. 242.

PIP insurance is designed to provide the insured with an immediate source of payment for out-of-pocket expenses resulting from an automobile accident. PIP benefits are available to an insured without proof of fault, and a pedestrian injured in an automobile accident is statutorily defined as an "insured." RCW 48.22.005(5)(b)(ii). Brayan, therefore, was an insured under Prieto's PIP coverage. *Id.*; *cf. Matsyuk v. State Farm Fire & Cas. Co.*, 173 Wn.2d 643, 654 n.4, 272 P.3d 802 (2012).

Under Washington law, insureds and insurers are in a quasi-fiduciary relationship. *See Van Noy v. State Farm Mut. Auto. Ins. Co.*, 142 Wn.2d 784, 793, 16 P.3d 574 (2001); *Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 385-86, 715 P.2d 1133 (1986). This quasi-fiduciary "relationship exists not only as a result of the contract between insurer and insured, but because of the high stakes involved for both parties to an insurance contract and the elevated level of trust underlying insureds' dependence on their insurers." *Tank*, 105 Wn.2d at 385.[2] Thus the quasi-fiduciary relationship arises not only out of the contract but also out of the type of occurrences that are covered by insurance, the high stakes of insurance litigation, and the necessary trust and reliance that an insured places on

---

[2] *Tank* held an insurer must give "*equal* consideration" to the insured's interests as its own. *Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 389, 823 P.2d 499 (1992) (quoting *Tank*, 105 Wn.2d at 385-86). Although the *Tank* court characterized the relationship as a fiduciary relationship, later case law restated the relationship as a quasi-fiduciary relationship. *See Van Noy*, 142 Wn.2d at 793.

its insurer. *See* Br. of Amicus Curiae Wash. State Ass'n for Justice Found. at 8 ("An insurer's duty to exercise good faith is not limited to its contractual obligation to pay benefits, but 'permeates the insurance arrangement.'" (quoting *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 165 Wn.2d 122, 129, 196 P.3d 664 (2008))).

By making the PIP claim on the tortfeasor's insurance company, the insurance company *is also the pedestrian's* insurer. RCW 48.22.005(5)(b)(ii). Even without a contract, the PIP claimant is required to cooperate with the insurer or risk denial of coverage.

We hold that an insurer owes a pedestrian PIP insured the same quasi-fiduciary duties that it owes a named insured who purchases a policy. Specifically, the "'insurer must deal fairly with an insured, giving equal consideration in all matters to the insured's interests.'" *See Van Noy*, 142 Wn.2d at 794-95 (emphasis omitted) (quoting *Tank*, 105 Wn.2d at 386). This approach is consistent with our common law and the plain language of RCW 48.01.030, which requires insurers to act in "good faith, abstain from deception, and practice honesty and equity in *all* insurance matters." (Emphasis added.) With this quasi-fiduciary relationship in mind, we turn to the work product issue.

II.   Work Product

The Court of Appeals found the PIP form was protected work product. We agree. The work product rule states:

8

> [A] party may obtain discovery of documents and tangible things otherwise discoverable under subsection (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including a party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of such party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

CR 26(b)(4). Where the insured was the policyholder, we have held work product protections apply. *See Heidebrink v. Moriwaki*, 104 Wn.2d 392, 396, 706 P.2d 212 (1985); *Harris v. Drake*, 152 Wn.2d 480, 490, 99 P.3d 872 (2004). Here, the insurance relationship exists as a matter of statute, not contract. Nonetheless, we find the overarching reasoning of *Heidebrink* and *Harris* applies because the specific parties are in a quasi-fiduciary relationship. As such, Diaz may reasonably expect her insurer to give equal consideration to her interests as its own and has an expectation of confidentiality in the forms she submits.

*Heidebrink* is the leading case interpreting the work product rule in Washington in the context of communications between insureds and their insurers. 104 Wn.2d at 396. We held there was a "reasonable expectation that the contents of statements made by the insured will not be revealed to the opposing party." *Id.* at 400. After a searching review of scholarship and case law in other jurisdictions, we concluded:

> [T]he better approach to the problem is to *look to the specific parties involved and the expectations of those parties*. With these parties in mind,

9

the scope of CR 26(b)(3)[3] should provide protection when such protection comports with the underlying rationale of the rule to allow broad discovery, *while maintaining certain restraints on bad faith, irrelevant and privileged inquiries in order to ensure just and fair resolutions of disputes.*

*Id.* at 399-400 (emphasis added). Therefore, in determining whether a statement is prepared in anticipation of litigation and therefore covered under CR 26(b)(4), we must look to the specific parties involved and the expectations of those parties, the rationale for the rule, and the need to restrain bad faith and intrusion into privileged materials. *See also Harris*, 152 Wn.2d at 489 ("*Heidebrink* requires examination of the relationship of the parties in each case.").

Subsequently, in *Harris*, we applied *Heidebrink* and held that work product protection applied to an insured's independent medical examination performed at the request of the PIP insurer, based on the specific parties and their expectations. *Id.* at 490-91. In doing so, the *Harris* court carefully scrutinized the parties' relationship—emphasizing that "the relationship between an insured and his or her insurer is sometimes adversarial, while at other times the interest of the insured and insurer are aligned. This dual relationship requires close examination, evaluating the specific positions of the insurer and insured in each instance." *Id.* at 489.

Analyzing the specific parties and their expectations here, as we must under *Heidebrink* and *Harris*, we emphasize there is a dual relationship between Diaz

---

[3] The rule was renumbered to CR 26(b)(4) in 1990. For ease of reading, we refer to the current numbers. *See Harris*, 152 Wn.2d at 486 n.1.

and Brayan and their insurer. As a tort plaintiff against the named insured, Diaz and Brayan's relationship with the insurer is adversarial. As a pedestrian PIP insured, they are in a quasi-fiduciary relationship with the insurer.[4] As such, Diaz and Brayan reasonably expect their insurer to deal fairly with them and give equal consideration in all matters to their interests.

Further, as Brayan's parent and natural guardian, Diaz went to a law firm for legal assistance. As part of providing that legal assistance, the law firm sent a PIP application form to the parties' shared insurance company. Diaz did not fill out the forms herself, and it cannot be seriously contended that she sought legal assistance merely to have help filling out forms—Prieto ran over her eight-year-old son's leg, seriously injuring him. That no lawsuit had been filed when Diaz prepared Brayan's PIP application is of no consequence; Diaz plainly signed the form in *anticipation of litigation*, in a lawyer's office, with assistance from the law firm ultimately suing Prieto. Indeed, in *Heidebrink*, we stated that had the statements been "made directly to the [insurance company's] selected attorney, it would

---

[4] We respectfully disagree with the dissent's statement that "PIP claims are, by nature, nonadversarial." Dissent at 4. This characterization belies human experience and our case law. *See Harris*, 152 Wn.2d at 488. In recognition of both the inherent conflict and the quasi-fiduciary relationship between the parties, the information obligated to be provided by the insured when seeking PIP benefits is presumptively confidential. *E.g.*, *id.* at 490. It is often the insurer who will assert work product privilege against an adversary in litigation or the adversary's liability carrier. *E.g.*, *id.* at 491-92. This was the case in *Harris,* where the insurer asserted the privilege as the insured's representative. *Id.* Here, of course, Diaz asserted the privilege directly, and the reasoning in *Harris* supported her doing so.

obviously have been made in anticipation of litigation." 104 Wn.2d at 400. The statements were made in anticipation of litigation. Thus, we hold work product protections apply.

III.   Prejudice

Having concluded it was error for the trial court to hold the document was not protected, we must next determine whether the trial court's error was of sufficient magnitude to necessitate a new trial. Prieto argues there is no prejudice because the evidence was cumulative and admission of cumulative evidence is harmless.

When a trial court makes an erroneous evidentiary ruling, the question on appeal becomes whether the error was prejudicial, for error without prejudice is not grounds for reversal. *Driggs v. Howlett*, 193 Wn. App. 875, 903, 371 P.3d 61 (2016) (citing *Brown v. Spokane County Fire Prot. Dist. No. 1*, 100 Wn.2d 188, 196, 668 P.2d 571 (1983)). Error will be considered prejudicial if it presumptively affects the outcome of the trial. *James S. Black & Co. v. P&R Co.*, 12 Wn. App. 533, 537, 530 P.2d 722 (1975). Improper admission of evidence constitutes harmless error if the evidence is cumulative. *Hoskins v. Reich*, 142 Wn. App. 557, 570, 174 P.3d 1250 (2008).

Prieto argues the evidence is cumulative because the statement as to how the accident happened, as stated in the PIP application, was cumulative of the trial

testimony of Diaz's own accident reconstruction expert. Prieto argues, "<u>Before</u> the PIP application was admitted, the expert testified as to Brayan's 'explanation of how he rode that day, prior to being hit.' Therefore, the record at trial contains undisputed evidence that Brayan himself told his expert he rode into the street prior to being hit." Suppl. Br. of Pet'r at 19 (quoting 1 RP (June 2, 2016) at 167). We are not persuaded by this characterization of the evidence.

Prieto is correct that the expert stated Brayan rode *in* the street "prior to being hit," i.e., *earlier that day*, but that is not at issue. 1 RP (June 2, 2016) at 167. At issue is what happened *immediately before* Brayan was hit. Regarding that issue, the PIP form says "child on a bike *rode into road*" and due to a blind spot "was struck," which Prieto used to attack Diaz's version of the events. Def.'s Ex. 101, at 1 (emphasis added). Diaz said *immediately before being hit* Brayan was not riding, he was leaned over untangling his shoelace. The PIP form was not cumulative as Diaz's evidence strikingly differed.

Admission of the PIP form prejudiced Diaz.[5] It was used extensively by Prieto's counsel throughout trial. It was used in opening; it was used to cross-

---

[5] The dissent contends the PIP form "was not important to the issue before the jury." Dissent at 5. The importance of the PIP form cannot be understated because it went to the issue of liability, which was the central issue in this case. It is unclear how much weight the jury gave to the PIP form in coming to its determination that Prieto was not negligent. *See Driggs*, 193 Wn. App. at 903 ("When the reviewing court is unable to know what value the jury placed on the improperly admitted evidence, a new trial is necessary." (citing *Thomas v. French*, 99 Wn.2d 95, 105, 659 P.2d 1097 (1983))).

13

examine Diaz and Diaz's accident reconstructionist; it was used to form opinions of the accident by an accident reconstructionist retained on behalf of Prieto; and it was used in closing argument to question Diaz's credibility. Further, when Prieto's counsel used the PIP form, he almost always emphasized the fact that it was signed by Diaz, thereby attributing the statements to her. Diaz did not make these statements; the legal assistant filled out the PIP form based on the police report. Crucially, the speculative statements in the police report were hearsay and the police report was inadmissible at trial for this reason.

Prieto's counsel repeatedly claimed throughout trial that Brayan was hit after he rode his bicycle between two parked cars and into the road. Prieto asserts Diaz's accident reconstructionist's testimony supports this claim but, as discussed above, it does not—the PIP form served as the basis for the claim, and the PIP form was therefore not cumulative. The trial court erroneously admitted the PIP form, and its admission prejudiced Diaz.

CONCLUSION

The PIP form was work product in light of the specific parties and their expectations, and its admission prejudiced Diaz. We affirm the Court of Appeals and remand for a new trial.



González, J.

WE CONCUR:

Fairhurst, C.J.

Stephens, J.

Wiggins, J.

Owens, J.

Yu, J.

*Barriga Figueroa v. Prieto Mariscal*

No. 95827-1

JOHNSON, J. (dissenting)—The work product doctrine is meant to serve as a narrow exception to otherwise broad discovery and is confined to materials that are prepared in anticipation of litigation. Our cases have established that in the insurance context, a determination of whether this protection applies requires that the court conduct a fact-specific inquiry looking at the "specific parties involved and the expectations of those parties." *Heidebrink v. Moriwaki*, 104 Wn.2d 392, 400, 706 P.2d 212 (1985). We reiterated this factual analysis in *Harris v. Drake*, where the relationship between the insurer and insured was of particular importance, and we observed that the relationship "requires close examination, evaluating the specific positions of the insurer and insured in each instance." 152 Wn.2d 480, 489, 99 P.3d 872 (2004). The majority acknowledges the fact-specific nature of this inquiry but then ignores it and proceeds to apply work product protection to a personal injury protection (PIP) application form where no factual basis exists to support doing so. Furthermore, even assuming the trial court committed error by admitting the application form, the form was not material to the jury's determination or prejudicial to the plaintiff, and only by selectively mischaracterizing the record does the majority conclude otherwise.

While CR 26(b)(4) protects from discovery "documents and tangible things . . . prepared in anticipation of litigation or for trial," this protection is not absolute. In *Heidebrink*, we acknowledged the particular difficulty in the insurance context of determining whether materials were prepared in anticipation of litigation because litigation is part of the ordinary course of business when dealing with insurance claims. The parties in that case urged adoption of rules governing work product protection in insurance matters that ranged from affording protection only to materials prepared by an attorney to very broad protection of all materials prepared in any insurance investigation. We stated that although the cases presented by the parties were "on point," we believed it would be *"inappropriate to subscribe entirely to the rationale of either set of cases." Heidebrink*, 104 Wn.2d at 399 (emphasis added). We instead established our case-by-case, fact-specific analysis and held that courts employing it should seek to comport with the underlying rationale of CR 26(b)(4), allowing broad discovery while maintaining certain restraints on bad faith, irrelevant, and privileged inquiries. In other words, courts should avoid applying work product protections except where necessary "to ensure just and fair resolutions of disputes." *Heidebrink*, 104 Wn.2d at 400.

The majority recognizes that *Heidebrink* is the controlling case here and purports to engage in an analysis of these parties and their expectations. However, despite a record that is devoid of any indication the plaintiff, Monica Diaz Barriga

Figueroa,[1] anticipated litigation, the majority determines work product protection should apply to her PIP application form. What is in the record regarding the application is: (a) it was for no-fault insurance, which here requires no assertion of liability and is, therefore, nonadversarial, (b) Diaz signed it while it was blank, (c) it was completed and submitted before a complaint had been filed against the alleged at-fault driver, Prieto, and (d) a law office helped complete it, including filling in the accident description, using the description from the police report. What is not in the record is any indication that Diaz or her attorney felt this document might be utilized in a lawsuit.

The majority asserts that "it cannot be seriously contended" that Diaz "sought legal assistance merely to have help filling out forms" and then concludes that she signed the PIP application in anticipation of litigation. Majority at 11. But there is nothing in the record to support such a finding; it is pure speculation by the majority. The majority also relies on the "dual relationship" between Diaz and the insurer, arguing that "[a]s a tort plaintiff against the named insured, Diaz and Brayan's relationship with the insurer is adversarial." Majority at 10. This argument ignores that we should be focusing on the expectations of the parties *at the time the PIP application was prepared*. At that time, no lawsuit had been filed;

---

[1] For the sake of consistency, we follow the majority's lead in referring to the respondent as Diaz and the petitioner driver, Consuelo Prieto Mariscal, as Prieto.

therefore, the majority's assertion that Diaz was an adversarial tort plaintiff is wrong.

As we indicated in *Harris*, the relationship between an insured and an insurer is complicated. This relationship "is sometimes adversarial, while at other times the interests of the insured and insurer are aligned," thus, the need for "close examination." *Harris*, 152 Wn.2d at 489. Such an examination here reveals no indication of an adversarial relationship between Diaz and the insurer at the time she completed the application form. Only two conditions must exist to qualify for PIP benefits: (1) that a person meets the definition of an "insured" and (2) that a motor vehicle accident occurred that caused the person injury. Because fault plays no factor in coverage, PIP claims are, by nature, nonadversarial.

The record simply does not indicate that Diaz anticipated litigation when she signed the PIP application; it indicates only that she employed an attorney who assisted her with filing a PIP claim. By extending work product protections to this application, the majority seemingly, but without expressly stating so, abandons our fact-specific analysis in favor of broad protection for any materials prepared in the insurance context. If we properly apply what our prior cases established and recognize the underlying policy of CR 26(b)(4) favoring broad discovery, work product protections do not apply here.

But even if we were inclined to find that work product protection extended to the PIP application form and it was error to use it at trial, error without prejudice is not grounds for reversing the jury verdict. *Brown v. Spokane County Fire Prot. Dist. No. 1*, 100 Wn.2d 188, 196, 668 P.2d 571 (1983). For an error to be prejudicial, it must be determined that "within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred." *State v. Tharp*, 96 Wn.2d 591, 599, 637 P.2d 961 (1981).[2] The majority asserts that the PIP application was prejudicial for two reasons: (1) because it was used by defense counsel to impeach both Diaz and her accident reconstruction expert, Patrick Stadler, and (2) because the PIP form served as the basis for defense counsel's assertion that Diaz's son, Brayan, rode into the road. In doing so, the majority ignores the record, failing to acknowledge that the PIP application form was not important to the issue before the jury, was not the only evidence in front of the jury, and was not the only means by which defense counsel impeached Diaz and Stadler.

During cross-examination of Diaz, defense counsel sought to impeach her testimony on multiple points and overwhelmingly did so using statements other

---

[2] The majority cites *Driggs v. Howlett*, 193 Wn. App. 875, 903, 371 P.3d 61 (2016), for the proposition that a new trial is required anytime a reviewing court is unable to determine what value a jury may have placed on improperly admitted evidence. Majority at 13 n.4. But the *Driggs* court derived this rule from cases involving hearsay evidence that should have been admitted only for a limited purpose. This rule has no applicability here.

than those in the PIP application. *See, e.g.,* 2 Report of Proceedings (RP) (June 2, 2016) at 283-86 (using Diaz's earlier deposition testimony to impeach her inconsistent testimony regarding how Brayan was positioned when she arrived at the scene); 2 RP (June 3, 2016) at 299-303 (using the initial complaint to impeach Diaz's description of Brayan's conduct leading up to the accident), 304 (using Diaz's deposition testimony to impeach her description of Brayan's conduct leading up to the accident). As to the majority's assertion that the application was used by defense counsel to impeach Stadler, this is entirely unsupported by the record. The application was first brought up during redirect by plaintiff's counsel, and defense counsel questioned him on recross as to whether the description on the application was consistent with the idea that Brayan had been in a blind spot and with the description given in the police report. However, while this form was not used to impeach Stadler, defense counsel did impeach him through other means. *See* 1 RP (June 2, 2016) at 165-69 (impeaching Stadler using a diagram he drew that was consistent with the defense counsel's theory of the accident), 169-71 (using Stadler's deposition testimony to impeach his assertion that he had not considered the defense's theory of the accident), 171-72 (using Stadler's deposition testimony to impeach him after he avoided answering whether the defense's theory could result in Brayan's injuries).

Significantly, defense counsel illustrated the differing accounts of how the accident occurred using deposition testimony from both Diaz and Stadler, as well as the initial complaint. The majority mischaracterizes the entirety of the trial records by asserting that only the PIP application supported the defense's theory of how the accident occurred. Majority at 14. The PIP application was arguably cumulative both as a means of impeachment and as a means of establishing the defense's theory.

It is highly unlikely the jury considered the PIP application form convincing as substantive evidence. At trial, when defense counsel sought to impeach Diaz with the application, she countered by testifying that she signed the application when it was blank and would not have done so if she had known her attorney would use the description from the police report. During recross, Stadler described the accident description in the application and the police report as inconsistent with the physical evidence. Finally, during rebuttal, an employee of Diaz's attorney testified and explained that he, not Diaz, had inserted the description of the accident. Despite all of the evidence and testimony, the majority never explains, and cannot explain, how the de minimis use of the prior inconsistent statement in the PIP application form, made by a nonwitness to the accident, could have possibly had a material effect on the jury's decision.

The Court of Appeals should be reversed.

_Johnson, J._

_Geoh McCud, J._

_Madsen, J._